IN THE MATTER OF THE APPEAL OF REEVES BROADCASTING CORPORATION FROM THE VALUATION PLACED ON PROPERTY BY BRUNSWICK COUNTY FOR 1965.

(Filed 1 May 1968.)

1. **Taxation § 25—**

The time and manner for listing and valuing property for ad valorem taxation is regulated by the Machinery Act, G.S. 105-271, *et seq.*

2. **Same—**

Real property is valued octennially for ad valorem taxation, G.S. 105-278, and all property not subject to reassessment must be listed in subsequent years at the value at which it was assessed at the last revaluation.

3. **Same—**

Real property which has increased more than $100 in value by virtue of improvements or which has been subdivided into lots on streets already laid out and open for travel and sold or offered for sale as lots since the last assessment is subject to reassessment in the years between octennial revaluations. G.S. 105-279.

4. **Same—**

The County Board of Equalization and Review has the duty to correct the valuation of any property so that all property is listed on the tax records at the valuation required by law.

5. **Same—**

A taxpayer may appeal an order of the Board of Equalization and Review to the State Board of Assessment pursuant to G.S. 105-329.

6. **Same—**

The county tax supervisor must provide for a uniform schedule of values to be used in appraising real property, and must see that all property being appraised is actually visited and observed by the township list taker or an expert appraiser. G.S. 105-295.

7. **Same—**

G.S. 105-295 is directory only, and failure of the assessors to consider

every *indicia* of value recited in the statute does not vitiate the appraisal.

**8. Same—**

All real property must be appraised for ad valorem taxation, as far as practicable, at its true market value in money, and the Board of County Commissioners must determine the assessment ratio to be applied to the appraised value of the property. G.S. 105-294.

**9. Same—**

Upon appeal from the County Board of Equalization and Review, the State Board of Assessment has authority to reduce, increase or confirm the valuation fixed by the County Board, and the valuation fixed by the State Board is final and conclusive when supported by material and substantial evidence in the absence of a showing of abuse of discretion or an error of law prejudicial to the taxpayer.

**10. Appeal and Error §§ 26, 28—**

An exception to the findings of fact and conclusions of law and the judgment of the court, although broadside, is sufficient to present the record proper for review and to raise the question whether error of law appears on the face of the record.

**11. Appeal and Error § 26—**

An appeal is itself an exception to the judgment and to any matter appearing on the face of the record proper.

**12. Taxation § 25—**

Upon an appeal from an order of the State Board of Assessment, the Superior Court is without authority to make its own findings of fact and to order that the County Board place a certain valuation on the property in question, and where the findings of the State Board are supported by competent, material and substantial evidence and are unaffected by error of law, it is error for the Superior Court to fail to affirm the Board's decision.

APPEAL by Brunswick County from *Bailey, J.,* at the August 1967 Civil Session WAKE Superior Court.

The record in this case was made at the hearing before the State Board of Assessment (State Board). The following facts, supported by the evidence, are related here for a better understanding of the matters involved on this appeal.

1. About 1960 Reeves Broadcasting Corporation (Reeves) became the owner and developer of a large tract of land in Brunswick County known as the Boiling Spring Lakes property. Over 6,000 acres are located in Town Creek Township and about 5,000 acres in Smithville Township.

2. Real property in Brunswick County was last revalued for tax purposes in 1958, and the next revaluation year prescribed by G.S. 105-278 for Brunswick County was 1967.

3.   In 1958 the property in question was listed for taxation as follows:

| | |
|---|---|
| Town Creek Township | |
| 6602 acres Allen Creek | $ 66,020 |
| Smithville Township | |
| 5000 acres Allen Creek | $ 50,000 |
| Total tax valuation | $116,020 |

4.   Improvements were made to the land during 1959, 1960, 1961 and 1962. Conferences were held between the taxpayer and Brunswick County and the assessed value of the property for 1962 was increased to $141,390 by agreement. In 1964 certain additional improvements to the property were listed by Reeves bringing the assessed value to $150,750 for that year. The County attempted to increase the assessed valuation for 1964 but due to a technicality, which was unexplained, reverted to the 1963 valuation and used it for tax purposes for 1964. The changes made as of January 1, 1965 were the changes which the County attempted to make for 1964.

5.   In 1963 and 1964 Reeves opened new areas and new streets and developed new sections. It has spent $75,000 to $100,000 building a dam to form a large lake covering more than 100 acres and subdivided the area around the lake into more than 100 lots which have an average market value of $3,000 each. It built a nine-hole golf course and a club house on the property at a cost of approximately $200,000. There are approximately 37 miles of road in the development, some of which were built between 1962 and 1965. Between twelve and fifteen maps are on record showing various areas being subdivided into lots. All the land within the development, except the portion subdivided into lots, is on the tax books at a valuation of $10 per acre. Some of this acreage is being sold as 10-acre timber tracts at $149.50 per acre.

6.   In 1963 Reeves furnished the Tax Supervisor for Brunswick County a list showing the various sections under development, the number of lots in each section, and the value, or selling price, placed on each lot by the owner. On the basis of that information Brunswick County attempted to make the 1964 listing but reverted to the 1963 values due to some technicality. The values thus furnished in 1963 were followed in making the tax assessment for 1965 now under attack in this case.

7.   Real estate valuations for the year 1965 in Brunswick County were made under the supervision and direction of Mrs. Ressie R. Whatley, County Tax Supervisor. In 1958 the property consisted primarily of swamp and woods and was listed at $10 an acre. The

1963 and 1964 assessments were based on changes that had been made to and including 1962. Many additional changes occurred during 1964 which prompted the reappraisal for 1965. Mrs. Whatley went upon the property a number of times, riding through it in her car and looking it over. She did not go out and walk over the property. She observed it with respect to subdivision into lots and made a report to the County Board of Equalization and Review (County Board) with her recommendations in the form of a breakdown of values by the acre and by the lot. The County Board inspected the property, accepted the recommendations of Mrs. Whatley and assessed the Reeves property for 1965, using the 1963 sales price figures furnished by the taxpayer as the appraised value of each parcel, tract or lot. Recorded maps show a total of 4,174 lots in Town Creek Township and 905 lots in Smithville Township.

The listing by Reeves Broadcasting Corporation for the year 1965, except for subdivided lots, is as follows:

|  |  |
|---|---|
| Smithville Township | |
| 4723 acres Allen Creek, $10 per acre | $47,230 |
| 200 acres in Town of Boiling Spring Lakes at $50 per acre | 10,000 |
| 77 acres, country club and golf course | 20,770 |
| Sales office building (new) | 2,830 |
| Total | $80,830 |

|  |  |
|---|---|
| Town Creek Township | |
| 6302 acres at $10 per acre (this also has a small office building on it.) | $63,340 |
| 300 acres within the town, Allen Creek, $50 per acre, plus pump house | 17,700 |
| 154.9 acres at $10 per acre | 1,550 |
| 1 lot, # 140, Sec. 6 (Admin. office Bldg.) | 3,500 |
| Less Brown and Hufham houses (sold) | (7,430) |
| 1 lot, #93, Sec. B, Lake View section | 4,400 |
| 1 lot, #1B, Commercial | 900 |
| Total | $83,960 |

In addition to the foregoing listings by the taxpayer, the County Tax Supervisor added the following:

|  |  |  |
|---|---|---|
| In Town Creek Township 4174 lots as shown on recorded maps of subdivisions at a valuation of | $528,310 | |
| This is an average per lot valuation of | | $126.57 |

In Smithville Township, 905 lots as shown
  on recorded maps of subdivisions at a
  valuation of                                 $180,910
This is an average per lot valuation of                    $200.00

All of the Town of Boiling Spring Lakes and the holdings of Reeves Broadcasting Corporation were carried on the tax books as acreage until subdivision maps had been placed on record from which lots were sold or contracted to be sold.

8. No lots around the big lake have been sold for less than $2,000. The price for these lots has ranged from $2000 to $3800, averaging $3000, according to Charles A. Tate, Development Manager for Reeves. Waterfront lots at Spring Lake were sold for $695, while those not fronting on the water were sold from $300 to $500. Every lot which has been sold in every development is adaptable to the use for which it was sold. Some of the lots shown on the maps are not salable in their present condition but will require filling in before they can be sold.

9. Brunswick County has endeavored to encourage developers of real estate within the county and has followed a system of placing fixed values on all real estate within the county and then giving a discount to a developer. With the exception of Reeves Broadcasting Corporation, the County, after establishing the appraised value, then gives all developers a 35% "depreciation" so that in effect property under development is appraised at 65% of its market value. Then an assessment ratio of 50% is applied to the depreciated value, the net result being that a developer's property is taxed at 32.50% of its appraised market value.

Because Reeves Broadcasting Corporation was a large, new development trying to get started, Brunswick County gave it special consideration in that appraised values were established for its property and then Reeves was given a developer's "depreciation" of 50% (instead of 35%), and then an assessment ratio of 50% was applied to such depreciated value, the net result being that its property was initially placed on the tax books at 25% of its appraised market value.

In preparing the 1965 listing and values of the Reeves property, Brunswick County first appraised the lots at 65% of the advertised selling price, the value fixed by the taxpayer itself. Then the 50% "depreciation" allowance was applied. Then the property was actually assessed for taxation at 50% of the "depreciated" value, the net result being that the lots in the various subdivisions of the Reeves property were listed for taxes for the year 1965 at 16.25% of the advertised selling price.

Long Beach and its Tranquil Harbour division is the develop-
ment in Brunswick County which most reasonably compares with
Reeves. In this development all lots shown on recorded maps are
first appraised at 65% of the advertised sales price. Then 35% of
that figure is deducted as a "depreciation allowance", and then each
lot is taxed at 50% of this figure, the net result being that the lots
are taxed at 21.13% of the advertised sales price.

Barbee's, Inc., James M. Harper, Jr.'s "Deep Water Heights Sub-
division of Southport", the R. I. Mintz "River Heights Addition to
the Town of Shallotte", Ocean Isle Development and Sunset Beach-
Twin Lakes Development are all treated in the same basic manner
as the Tranquil Harbour-Long Beach development.

10. After the tax supervisor and the County Board of Equaliza-
tion and Review had assessed the Reeves property for 1965 as set
out in paragraph 7 above, Reeves appealed to the State Board of
Assessment assigning as grounds "excessive and illegal valuation and
discrimination in comparison with valuation of similar lands, the in-
crease over the 1964 valuation was without legal authority, no com-
petent appraiser has visited and observed the property in making
the valuations from which this appeal is taken, . . . the increase
in valuation is confiscatory and is an unconstitutional taking of pri-
vate property for public use without due process of law, . . ."

The State Board of Assessment "gave careful consideration to all
pertinent facts, evidence and testimony given by the taxpayer and
the County" and to the brief filed by the taxpayer, made certain
findings set out in its order, and determined that "the valuation of
Section 16 of the property and such portions of Sections 8 and 9
as do not represent lots on streets which were open to travel on
January 1, 1965, [nor on a lake front,] should be valued on an acre-
age basis and appraised at $10 an acre. . . . [A]ny lots on swampy
land not suitable for the use for which intended should be appraised
at values which would reflect the cost of reclaiming the lots. . . .
[A]ppraised values placed on all other property of appellant by
Brunswick County are proper." The State Board thereupon remanded
the taxpayer's appeal to Brunswick County for action in keeping
with such order.

11. Reeves Broadcasting Corporation petitioned the Superior
Court of Wake County for a judicial review of said order under G.S.
143-306, et seq. contending the State Board (1) exceeded its authority,
(2) acted arbitrarily and capriciously, (3) placed an excessive val-
uation on the property which was unlawful and unequal when com-
pared with similar property in Brunswick County, and (4) was
erroneous in failing to adjudge that Brunswick County had followed

an unlawful procedure in violation of the statutes in its 1965 reassessment of the property for taxation.

When the matter was heard before Judge Bailey at the August 1967 Civil Session of Wake County Superior Court, he made certain findings which, conjunctively, sustained the position of Reeves, vacated and set aside the reassessment of the property for the year 1965 and remanded the cause to the State Board with directions that the 1964 valuation of said property be placed into effect for the tax year 1965.

To the findings and conclusions and to the judgment itself Brunswick County excepted and appealed to the Supreme Court.

*E. J. Prevatte, attorney for Brunswick County, appellant.*

*Sullivan & Horne; Broughton & Broughton by John D. McConnell, Jr.; attorneys for Reeves Broadcasting corporation, appellee.*

HUSKINS, J.   The assessment, listing and collection of taxes is regulated by the Machinery Act, G.S. 105-271, *et seq.*, which prescribes the time and manner for listing and valuing property for *ad valorem* tax purposes. Portions of the act pertinent to decision in this case are analyzed below.

Real property in Brunswick County must be listed and assessed for *ad valorem* taxes on January 1, 1958 and every eighth year thereafter. G.S. 105-278. The Board of County Commissioners is required to appoint a tax supervisor, G.S. 105-283, who is responsible for the proper listing and appraising of property. G.S. 105-286. The tax supervisor appoints list takers who in the first instance determine valuations. G.S. 105-287. The tax supervisor has the power, however, at any time prior to the meeting of the Board of Equalization and Review, "to change the valuation placed on any property by the list taker." G.S. 105-286(g). After the property has been listed and valuations placed upon it by the list takers or by the tax supervisor, the County Commissioners sit as a County Board of Equalization and Review. In such capacity it has the duty to equalize the valuation of all property in the county to the end that property shall be listed on the tax records at the valuation required by law. G.S. 105-327(g)(1). This board is required to correct, *inter alia,* the valuation of any taxable property on the tax list, increasing or decreasing the assessed value so as to conform the valuation to legal requirements. The board may not change the valuation of any real property from the value at which it was assessed for the preceding year except in accordance with the terms of G.S. 105-278 and G.S. 105-279. G.S. 105-327(g)(3). Real property is valued octennially as provided in G.S. 105-278. In other than octennial revaluation years, all

real property *not subject to reassessment* must be listed for *ad valorem* taxes at the value at which it was assessed at the last revaluation. The following property, however, is subject to reassessment in other than revaluation years, to wit: (1) all real property which has increased more than $100 in value by virtue of improvements or appurtenances added since the last assessment (except those exempt from taxation by G.S. 105-294 not pertinent here) ; and (2) all real property which has been subdivided into lots *on streets already laid out and open for travel,* and sold or offered for sale as lots, since the date of the last assessment. However, where lands have been subdivided into lots and more than five acres of any such subdivision remain unsold by the owner, the unsold portion may be listed as land acreage in the discretion of the tax supervisor. G.S. 105-279(3) b., f.

Any taxpayer may except to the order of the Board of Equalization and Review and appeal to the State Board of Assessment in the manner provided by G.S. 105-329.

In appraising real property for tax purposes, it is the duty of the county tax supervisor to see that every lot, parcel, tract, building, structure and other improvement being appraised is actually visited and observed by the township list taker or an expert appraiser employed to assist the tax supervisor and list takers. G.S. 105-295. Furthermore, the county tax supervisor is required to provide for the development and compilation of standard uniform schedules of values to be used in appraising real property in the county. G.S. 105-295. A separate property record for each tract, parcel, lot or group of contiguous lots must be prepared so property owners may ascertain the method and standard of value used in evaluating their properties. G.S. 105-295.

In determining value, the assessors should consider any or all of the following *indicia* when applicable to the particular property being valued, to wit: the location, quality of soil, timber, water power and privileges, mineral deposits, fertility, adaptability for commercial and other uses, past and probable future income therefrom, present assessed valuation, and any other features affecting the value of each separately listed tract, parcel or lot. G.S. 105-295. This statute, generally speaking, is directory. Failure to consider each and every *indicia* of value recited in the statute does not vitiate the appraisal. In appraising a vacant lot on Main Street, for example, an assessor would not likely give attention to mineral deposits or water power.

With respect to tax valuation, all real property as far as practicable, shall be appraised at its true market value in money. In re-

valuation years and annually thereafter, the Board of County Commissioners is required to adopt some uniform percentage of the appraised value as the value to be used in taxing property. This percentage is known as the assessment ratio and is applied to the appraised value of all property subject to assessment. The tax records of the county should show both the appraised value and the assessed value for tax purposes. G.S. 105-294.

When appeal is taken from the County Board of Equalization and Review to the State Board of Assessment, said Board is authorized, after timely notice to all interested parties and after hearing all evidence offered, to reduce, increase or confirm the valuation fixed by the County Board. The valuation thus determined by the State Board is entered upon the fixed and permanent tax records "and shall constitute the valuation for taxation." G.S. 105-329. Failure of the tax listers, or of the tax supervisor, to perform all duties imposed upon them in strict compliance with law does not give the taxpayer a tax-free year nor deprive the State Board (on appeal) of its authority "to reduce, increase, or confirm" the valuation fixed by the County Board. The State Board has full authority, notwithstanding irregularities at the county level, to determine the valuation and enter it accordingly. Such valuation so fixed is final and conclusive unless error of law or abuse of discretion is shown. *Belks Department Store, Inc., v. Guilford County,* 222 N.C. 441, 23 S.E. 2d 897. But judicial review of its administrative decisions is always available. *In re Freight Carriers,* 263 N.C. 345, 139 S.E. 2d 633. When a judicial review is sought in the superior court on the record made before the State Board, as in this case, that court is without authority to make findings at variance with the findings of the State Board which are supported by material and substantial evidence because that is the exclusive function of the State Board of Assessment. G.S. 143-315; *In re Pine Raleigh Corp.,* 258 N.C. 398, 128 S.E. 2d 855.

Applying these legal principles, it is apparent that the Reeves property was last reassessed in 1962 and was subject to reassessment in 1965 because (1) it had increased more than $100 in value by virtue of improvements since its last assessment and (2) many sections of it had been subdivided into lots on streets already laid out and open for travel, and sold or offered for sale as lots since the last assessment.

It is equally apparent that the 1965 list takers for Town Creek and Smithville Townships never placed a valuation on the Reeves property. The tax supervisor simply accepted the 1963 advertised selling price of the taxpayer itself, gave it a 35% reduction to

establish the true market value of the lots in question, then gave it a developer's "depreciation" of 50%, and the lots were then assessed for taxation at 50% of that amount. In short, the 1965 assessed value for tax purposes is 16.25% of the 1963 advertised selling price of each lot. This was done after the tax supervisor had driven over the property several times and looked it over. The County Board of Equalization and Review had also made an inspection trip before finally adopting the tax valuations established by the supervisor. This valuation appears to be as favorable to Reeves, or more so, than the valuations placed upon the property of any other taxpayer mentioned in the record. It is therefore difficult to understand how Reeves is aggrieved by failure of the County to strictly follow the statutes in listing this property. But be that as it may, after careful consideration of all pertinent facts, evidence and testimony, the State Board of Assessment determined that "the valuation of Section 16 of the property and such portions of Sections 8 and 9 as do not represent lots on Streets which were open to travel on January 1, 1965, [nor on a lake front,] should be valued on an acreage basis and appraised at $10 an acre. . . . [A]ny lots on swampy land not suitable for the use for which intended should be appraised at values which would reflect the cost of reclaiming the lots. . . . [A]ppraised values placed on all other property of appellant by Brunswick County are proper." The State Board thereupon remanded the taxpayer's appeal to Brunswick County for action in keeping with such order. Returning Section 16 to an acreage basis reduced the assessed valuation by $88,000. Further reduction in an undisclosed amount is effected with respect to Sections 8 and 9 and all lots on swampy lands. In this fashion the State Board determined the correct valuation of the Reeves property for tax purposes for 1965 as was its duty under G.S. 105-275.

The decision of the State Board was supported by material and substantial evidence and was therefore binding on the superior court. *In re Pine Raleigh Corp., supra.* The valuation as thus fixed is final and conclusive absent error of law or abuse of discretion. *Belks Department Store, Inc., v. Guilford County, supra.* Abuse of discretion is not shown, and error of law prejudicial to the taxpayer does not appear. Even so, in the future Brunswick County would be well advised to follow statutory procedure prescribed by the Machinery Act for the listing and assessment of taxes. Had it done so in this instance, resort to the State Board would not have been necessary.

Brunswick County excepted to the "findings of fact and conclusions of law" contained in the judgment of the superior court and to the judgment itself. This was sufficient to present the record proper

for review and to raise the question whether error of law appears on the face of the record. This is true even when the exceptions to the findings of fact are broadside, as in this case, and too general to be effective. *In re Wallace,* 267 N.C. 204, 147 S.E. 2d 922; *Vance v. Hampton,* 256 N.C. 557, 124 S.E. 2d 527; *Hertford v. Harris,* 263 N.C. 776, 140 S.E. 2d 420; *Lowe v. Jackson,* 263 N.C. 634, 140 S.E. 2d 1. "An appeal is itself an exception to the judgment and to any matter appearing on the face of the record proper." 1 Strong's N. C. Index 2d, Appeal and Error, § 26, and cases cited. Here, error appears on the face of the judgment in that it contains findings of fact whereas the superior court is not empowered to make findings of fact. Nor does it have authority to decree that "the valuations as of January 1, 1964 be that which said Brunswick County shall also place in effect as of January 1, 1965." The State Board of Assessment is the fact-finding body and not the superior court. The substantial rights of Reeves have not been prejudiced by the findings and conclusions of the State Board. It acted within its authority upon competent, material and substantial evidence, unaffected by error of law, and proceeded in a lawful way to adjudicate the basic question raised before it, *viz.,* whether the tax assessment of the Reeves property was too high. The superior court was therefore in error when it failed to affirm the decision of that agency. G.S. 143-315; *In re Pine Raleigh Corp., supra.*

For the reasons stated, the judgment of the superior court is reversed. Judgment will be entered in the court below remanding the proceeding to Brunswick County for compliance with the order of the State Board of Assessment.

Reversed and remanded.