IN THE MATTER OF: APPEAL OF: ROM B. PARKER, JR. FROM THE ORDER OF THE HALIFAX COUNTY BOARD OF COUNTY COMMISSIONERS ADOPTING THE SCHEDULE OF VALUES, STANDARDS AND RULES FOR THE 2007 GENERAL REAPPRAISAL

No. COA07-635

(Filed 15 July 2008)

**1. Taxation— ad valorem—present use schedule—soil type key**

The Property Tax Commission did not err when it concluded that there was no deficiency in a present-use schedule because of the absence of a soil type key. The information in the schedule of values provided sufficient detail to enable those making appraisals to adhere to the schedule; the burden is on the taxpayer to show the class of land in which his property fits and to obtain the soil values for his particular land from the department of agriculture.

**2. Taxation— ad valorem—value schedule—sufficiently detailed**

The Property Tax Commission did not err by concluding that a true value schedule contained enough detail to comply with N.C.G.S. § 105-317(b). Although the taxpayer contended that a schedule of values, standards and rules must contain all of the statutory factors listed in N.C.G.S. § 105-317(b)(1), the cases on which the taxpayer relied did not overrule prior cases and did not hold that each of the statutory factors must be considered. While the schedule of values here did not reveal specific mention of water power, water rights, or mineral deposits, taxpayer made no showing that those factors actually influenced the value of land in that county.

**3. Taxation— ad valorem—schedule of value—legal restrictions—sufficiently detailed**

A county schedule of values for property tax valuation was not required to include an adjustment for certain governmental restrictions, including The Clean Water Act, The Food Security Act, and The N.C. Sedimentation Pollution Control Act. When a county's schedule of values, standards and rules includes a general reference to legal restrictions on land use, it need not list every type of restriction in order to be sufficiently detailed.

IN RE APPEAL OF PARKER

[191 N.C. App. 313 (2008)]

**4. Taxation— ad valorem—valuation—shared ownership—no adjustment**

Property tax valuations in North Carolina are governed by the Machinery Act, not by the Internal Revenue Code, and there is no provision in the Machinery Act or the cases under it for the valuation of property to be adjusted for shared ownership, including tenancy in common.

**5. Taxation— ad valorem—valuation schedules—neighborhood information—sufficient for those making appraisal**

The detail in a county's schedule of values for property taxes contained sufficient information about neighborhoods for those making the appraisals to adhere to them in making appraisals.

**6. Taxation— ad valorem—valuation schedules—lot size**

A county schedule of values for property tax valuation was not insufficient because it did not contain a table of incremental and decremental rates for use in calculating valuations for properties of greater or lesser size than the base size listed in the tables in the schedule. Tract or lot size was not mentioned in N.C.G.S. § 105-317(a)(1) as a factor in determining the value of land, and it was not error for the county's schedule of values to not include incremental and decremental rates; however, lot size may be relevant in valuing property.

**7. Taxation— ad valorem—evidence before Commission—not prejudicial—review de novo**

There was no prejudice in a proceeding before the Property Tax Commission in the admission of testimony about the legal sufficieny of a county's schedule of values. The taxpayer's appeal was based strictly on the facial validity of the schedule and de novo review was conducted accordingly.

Appeal by taxpayer from Final Decision entered 22 March 2007 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 28 November 2007.

*Rom B. Parker, Jr., pro se.*

*Parker Poe Adams & Bernstein LLP, by Charles C. Meeker, for appellee, Halifax County.*

**IN RE APPEAL OF PARKER**

[191 N.C. App. 313 (2008)]

STROUD, Judge.

Taxpayer Rom B. Parker, Jr., appeals from the Final Decision of the North Carolina Property Tax Commission which confirmed the 2007 Halifax County Schedule of Values adopted by the Halifax County Board of Commissioners to appraise real property for the purpose of levying property taxes.

## I. Background

On 19 September 2006, the Halifax County Board of Commissioners approved the 2007 Halifax County Schedule of Values ("HCSV") at its regular meeting. Taxpayer filed a notice of appeal with the North Carolina Property Tax Commission ("PTC") pursuant to N.C. Gen. Stat. § 105-290(c) on 16 October 2006, contending that the HCSV was unlawful because it did not conform to the statutory requirements of N.C. Gen. Stat. § 105-317. The PTC heard the appeal on 14 December 2006. The PTC issued a Final Decision on 22 March 2007, confirming the HCSV. Taxpayer timely appealed to this Court pursuant to N.C. Gen. Stat. § 105-345.

On appeal, taxpayer contends that the 2007 Halifax County Schedule of Values is insufficient as a matter of law because (1) the present use value schedule does not contain a definition of the soil types ("soil type key") used for valuation, and (2) the true value schedule does not contain: (i) reference to each and every one of the statutory factors listed in N.C. Gen. Stat. § 105-317(a), (ii) a valuation adjustment for governmental restrictions on the land, (iii) a valuation adjustment for shared ownership of land, (iv) definition, delineation or maps of valuation neighborhoods, and (v) a table of incremental and decremental rates. Taxpayer also contends that the Property Tax Commission erred in the admission of the expert testimony of Charles M. Graham and Joe Hunt.

## II. Standard of Review

Taxpayer acknowledges that he is not challenging a specific property valuation, but rather appeals solely on the basis that the HCSV is inadequate on its face as a matter of law, pursuant to N.C. Gen. Stat. § 105-290(c)(1).[1]

---

1. A property owner of the county who, either separately or in conjunction with other property owners of the county, asserts that the schedules of values, standards, and rules adopted by order of the board of county commissioners do not meet the true value or present-use value appraisal standards established by G.S. 105-283 and G.S. 105-277.2(5), respectively, may appeal the

**IN RE APPEAL OF PARKER**

[191 N.C. App. 313 (2008)]

We review decisions of the [Property Tax] Commission pursuant to N.C.G.S. § 105-345.2. Questions of law receive *de novo* review, while issues such as sufficiency of the evidence to support the Commission's decision are reviewed under the whole-record test. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the Commission.

*In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 646-47, 576 S.E.2d 316, 319 (2003). Because taxpayer's appeal to the PTC challenged only the sufficiency of the HCSV as a matter of law pursuant to N.C. Gen. Stat. § 105-290(c), we will review the PTC's decision *de novo*.

On appeal of a property tax matter to this Court, as on appeal to the PTC, "the good faith of tax assessors and the validity of their actions are presumed[.]" *In re McElwee*, 304 N.C. 68, 75, 283 S.E.2d 115, 120 (1981). The taxpayer bears the burden of overcoming this presumption by showing the illegality or arbitrariness of the schedule of values, standards and rules through "competent, material and substantial evidence." *Id.* (citation and quotation marks omitted).

### III. Present-Use Value Schedule

**[1]** Taxpayer first argues that the Property Tax Commission erred when it concluded, as a matter of law, that "there is no deficiency in the present-use [value] schedule simply because the present-use value schedule does not contain a soil type key."[2] Taxpayer argues that the absence of a soil type key renders the schedule of present-use values, which is largely based on soil type, meaningless. We disagree.

North Carolina law directs tax assessors to prepare "[u]niform schedules of values, standards, and rules to be used in appraising real property at its true value and at its present-use value [which] are sufficiently detailed to enable those making appraisals to adhere to them in appraising real property." N.C. Gen. Stat. § 105-317(b)(1) (2005).

order to the Property Tax Commission within 30 days of the date when the order adopting the schedules, standards, and rules was first published, as required by G.S. 105-317(c).

N.C. Gen. Stat. § 105-290(c)(1) (2005).

2. The PTC incorrectly labeled this legal conclusion as a finding of fact. *See Estate of Gainey v. Southern Flooring*, 184 N.C. App. 497, 503, 646 S.E.2d 604, 608 (2007) (a legal conclusion mislabeled as a finding of fact is reviewed according to its substance not its label).

Generally, real property subject to taxation is appraised for taxation according to its true value.[3] N.C. Gen. Stat. § 105-283 (2005); *In re Appeal of Whiteside Estates, Inc.*, 136 N.C. App. 360, 364, 525 S.E.2d 196, 198, *cert. denied*, 351 N.C. 473, 543 S.E.2d 511 (2000). However, real property may be taxed at its present-use value, an amount typically lower than its true value, if a taxpayer is able to show that the property qualifies for present-use valuation. N.C. Gen. Stat. § 105-277.4(a) (2005); *Whiteside*, 136 N.C. App. at 364, 525 S.E.2d at 198. The present-use value of qualifying land is "[t]he value of land in its *current use* as agricultural land, horticultural land, or forestland, based solely on its ability to produce income and assuming an average level of management." N.C. Gen. Stat. § 105-277.2(5) (2005) (emphasis added). When a taxpayer wants his property valued at the lower present-use value, the burden is on the taxpayer to "clearly show that the property comes within one of the classes" eligible for present-use value, N.C. Gen. Stat. § 105-277.4(a), and to provide "*any other relevant information required by the assessor to properly appraise the property at its present-use value." Id.* (emphasis added).

The HCSV includes a table showing the estimated net income, capitalization rate, and use value per acre for different classes of agricultural land and refers users of the HCSV to the soil values determined by the North Carolina Department of Agriculture ("NCDOA"). The HCSV also includes a brief discussion, presumed made in good faith until rebutted by the taxpayer, *McElwee*, 304 N.C. at 75, 283 S.E.2d at 120, on the limitations of using soil type to value land by the soil productivity method and the method's dependence on available soil maps. These inclusions in the HCSV provided "sufficient[] detail[] to enable those making appraisals to adhere" to the HCSV "in appraising real property." N.C. Gen. Stat. § 105-317(b)(1). The burden is on the taxpayer to show the class of agricultural, horticultural, or forested land in which his property fits, and to obtain the soil values for his particular land from the NCDOA. N.C. Gen. Stat. § 105-277.4(a); *McElwee*, 304 N.C. at 77, 283 S.E.2d at 121 ("In every case, the burden of establishing entitlement to present use valuation

---

3. When used in this Subchapter, the words "true value" shall be interpreted as meaning market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

N.C. Gen. Stat. § 105-283 (2005).

is on the property owner."). Accordingly, we hold that the Property Tax Commission did not err in concluding that "there is no deficiency in the present-use [value] schedule simply because the present-use value schedule does not contain a soil type key."

## IV. True Value Schedule

[2] Taxpayer next contends the PTC erred when it concluded that the true value schedule in the HCSV contained sufficient detail to comply with N.C. Gen. Stat. § 105-317(b). Specifically, he contends that the HCSV lacked five elements of detail which must appear in a legally sufficient schedule of true values: (i) reference to each and every one of the statutory factors listed in N.C. Gen. Stat. § 105-317(a), (ii) a valuation adjustment for governmental restrictions on the land, (iii) a valuation adjustment for shared ownership of land, (iv) definition, delineation or maps of valuation neighborhoods, and (v) a table of incremental and decremental rates. We disagree.

We reiterate that a schedule of values, standards and rules ("SVSR") may only be appealed on the basis that it "do[es] not meet the true value . . . appraisal standards established by G.S. 105-283 . . . ." N.C. Gen. Stat. § 105-290(c)(1). In order for an SVSR to meet the true value appraisal standards of N.C. Gen. Stat. § 105-283, the SVSR should be "[u]niform [and] sufficiently detailed to enable those making appraisals to adhere to them in appraising real property." N.C. Gen. Stat. § 105-317(b)(1). Further, the assessor preparing an SVSR for land should

> consider as to each tract, parcel, or lot separately listed at least its advantages and disadvantages as to location; zoning; quality of soil; waterpower; water privileges; dedication as a nature preserve; conservation or preservation agreements; mineral, quarry, or other valuable deposits; fertility; adaptability for agricultural, timber-producing, commercial, industrial, or other uses; past income; probable future income; and any other factors that may affect its value except growing crops of a seasonal or annual nature.

N.C. Gen. Stat. § 105-317(a)(1) (2005). However, in applying the personal property appraisal statute, N.C. Gen. Stat. § 105-317.1, this Court held that "[i]t would be meaningless to construe literally the applicable appraisal statutes of the Machinery Act. These statutes must be interpreted in the light of tax history and legislative purpose. in formulating laws to guide local authority in the difficult

and complex problem of appraising property for tax purposes." *In re Appeal of Bosley*, 29 N.C. App. 468, 472-73, 224 S.E.2d 686, 689 (holding that an equitable and reasonably uniform and accurate method of valuation which reflects market values "does not violate the applicable appraisal statutes" for personal property even though the method does not consider every single factor listed in N.C. Gen. Stat. § 105-317.1(a)), *disc. review denied*, 290 N.C. 551, 226 S.E.2d 509 (1976). This Court has also held that "G.S. 105-317(a)(1) is directory and failure to consider each and every *indicia* of values recited in the statute does not vitiate the appraisal." *In re Appeal of Highlands Dev. Corp.*, 80 N.C. App. 544, 546, 342 S.E.2d 588, 589 (1986) (citing *In re Appeal of Broadcasting Corp.*, 273 N.C. 571, 160 S.E.2d 728 (1968)).

Taxpayer contends that *McElwee*, 304 N.C. 68, 283 S.E.2d 115 (1981), and *In re Allred*, 351 N.C. 1, 519 S.E.2d 52 (1999), both held that a schedule of values, standards and rules must contain all of the statutory factors listed in N.C. Gen. Stat. § 105-317(b)(1) to be legally sufficient, citing to language in *Allred* that stated, "petitioners have not taken the position that the . . . valuations resulted from any failure by the County or its appraiser to provide for a method by which each of the valuation factors designated in subsections 105-317(a)(1) and (2) could be considered and valued through the use of the uniform schedules of values, standards and rules[.]" 351 N.C. at 11, 519 S.E.2d at 58. We do not agree with taxpayer that a statement by the North Carolina Supreme Court that a particular issue was not presented for review served to overrule *Broadcasting, Bosley* and *Highlands*. To the contrary, in *Allred* the Court determined that the PTC erred when it ignored the County's schedule of standards and rules and based its decision on an expert's evaluation. 351 N.C. at 12, 519 S.E.2d at 59. Similarly, in *McElwee* the Court determined that the County's valuation was arbitrary because, *inter alia*, there was no evidence in the record that the County Commissioners had approved a schedule of values, standards and rules. 304 N.C. at 85, 283 S.E.2d at 125. Neither of those cases held that *each* of the statutory factors found in N.C. Gen. Stat. § 105-317(a) was required to be considered in a schedule of values, standards and rules. In fact, *McElwee* selectively quoted only those land valuation factors which were relevant to that particular case: "[t]he record does not demonstrate, and in no way can we imagine, that such factors as 'quality of soil . . . ; fertility; adaptability for agricultural, timber-producing, commercial, industrial, or other uses; past income; probable future income . . . ,' G.S. § 105-317(a)(1), could have received any consideration whatsoever[.]" 304 N.C. at 83, 283 S.E.2d at 124 (omissions and ellipses in

original); *see also In re Appeal of Broadcasting Corp.*, 273 N.C. 571, 578, 160 S.E.2d 728, 733 (1968) ("In appraising a vacant lot on Main Street, for example, an assessor would not likely give attention to mineral deposits or water power.").

The Land Pricing Schedule in the HCSV divides land into three categories—residential, commercial/industrial, and agricultural. This categorization expressly considers the adaptability for agricultural, commercial, industrial or other uses, as directed by N.C. Gen. Stat. § 105-317(a)(1). The HCSV also includes reference to the following additional factors, which apply across the categories of land: topography; shape or size, which expressly includes zoning restrictions; economic, including location; restrictions, including zoning and other legal restrictions; corner influence, which is a specific location factor; view, another location factor; economic misimprovement; and frequent flooding. Consistent with the liberal construction of the appraisal statutes set forth in *Bosley*, 29 N.C. App. at 472-73, 224 S.E.2d at 689, the HCSV expressly declined to use quality or fertility of the soil to determine true value because:

> Comparable sales in any area of the county will typically include a cross-section of the same soil characteristics, topography and water features as the parcels being appraised within that general area. Sales analysis of agricultural land sold in Halifax County during the past three years indicates that *buyers give little or no consideration to soil productivity or other soil features.* Location and price seem to be the only determining factors.

(Emphasis added.) Our review of the HCSV also does not reveal any specific mention of water power or water rights, other than the general reference to "water features" quoted above, or any mention of mineral, quarry, or other valuable deposits, but taxpayer has made no showing that those factors actually influence the value of land in Halifax County, and are therefore necessary details "to enable those making appraisals to adhere to them in appraising real property." N.C. Gen. Stat. § 105-317(b)(1).

[3] Taxpayer next contends that the HCSV was required to include a valuation adjustment for certain governmental restrictions on a tract of land, including The Clean Water Act, The Food Security Act, and The N.C. Sedimentation Pollution Control Act. We disagree.

Restrictions on land use, including governmental restrictions, while not specifically included in N.C. Gen. Stat. § 105-317(a)(1), cer-

tainly fall within the catch-all category of "any other factors that may affect its value except growing crops of a seasonal or annual nature[,]" N.C. Gen. Stat. § 105-317(a)(1). The HCSV does in fact expressly include restrictions on the use of land as a valuation factor. Though the example restrictions noted in the HCSV do not specifically mention governmental restrictions, this does not render the HCSV legally insufficient. The scope of legal restrictions is simply too broad to mention every conceivable type in a general use guideline like an SVSR. In so concluding, we emphasize that we do not hold that governmental restrictions on land are irrelevant to valuation of property for tax purposes. In fact, taxpayer correctly points out that in some cases governmental restrictions would be the most important valuation factor of all. We simply hold that when a County's SVSR includes a general reference to legal restrictions on land use, it need not list every type of restriction in order to be "sufficiently detailed to enable those making appraisals to adhere to them in appraising real property." N.C. Gen. Stat. § 105-317(b)(1).

[4] Taxpayer next contends that an SVSR must include a valuation adjustment for shared ownership of land, such as a tenancy in common. He cites cases from the United States Tax Court and pronouncements from the Internal Revenue Service which interpret the meaning of "fair market value" in the Internal Revenue Code. Taxpayer's reliance on these cases and pronouncements is misplaced. Property tax valuations in North Carolina are governed by the Machinery Act (N.C. Gen. Stat. §§ 105-271 *et seq.*), not by the Internal Revenue Code and the cases and pronouncements interpreting it. Taxpayer has cited no provision in the Machinery Act or in the cases interpreting it, and we find none, that the valuation of real property is to be adjusted for taxpayers who hold the property as tenants in common or another form of shared ownership. In fact, N.C. Gen. Stat. § 105-271 refers to valuation of tracts, parcels and lots of land but makes no mention of valuation of ownership shares of land.

[5] Taxpayer next argues that the "valuation 'neighborhoods' " listed in the HCSV are legally insufficient because they are completely "undefined, undelineated, and unmapped." Again, we disagree.

Taxpayer contends that "[t]his is in direct violation of G.S. 105-317(b)(1),(3) and (4) which requires that the Schedule of Values, Standards and Rules be in sufficient detail to enable both appraisers and property owners to understand the method, rules and standards of value by which property is appraised[.]" A careful review of the

statute subdivisions taxpayer relies on reveals that he has misapprehended them. N.C. Gen. Stat. § 105-317(b)(1) requires that "[u]niform schedules of values, standards, and rules to be used in appraising real property at its true value and at its present-use value are prepared and are sufficiently detailed to *enable those making appraisals* to adhere to them in appraising real property." *Id.* (emphasis added). On the other hand, N.C. Gen. Stat. § 105-317(b)(3) "require[s] that individual property records be maintained in sufficient detail to *enable property owners* to ascertain the method, rules, and standards of value by which property is appraised[,]" and N.C. Gen. Stat. § 105-317(b)(4) requires property characteristics relevant to tax valuation to be included in the individual property record.

The HCSV contains a list of neighborhoods with valuation amounts for residential, commercial/industrial and agricultural properties. This detail contained therein is sufficient to enable those making appraisals to adhere to those valuation amounts for each neighborhood to appraise the real property to be valued.[4]

**[6]** Next taxpayer argues that the HCSV is legally insufficient because it does not contain a table of incremental and decremental rates for use in calculating valuations for properties of greater or lesser size than the base size listed in the tables within the HCSV. Again, we disagree.

It is elementary that the size of a tract or lot of land affects its value. It is so elementary, in fact, the General Assembly did not mention it in N.C. Gen. Stat. § 105-317(a)(1) when it listed the factors which should be considered in determining the value of land. Because the General Assembly did not mention tract or lot size in N.C. Gen. Stat. § 105-317(a)(1) as a factor for determining true value, it was not error for the HCSV to fail to include a table of incremental and decremental rates for applying the base rate to individual properties of varying sizes. We are not holding that tract or lot size is not relevant in valuing property; surely it is relevant. We hold only that N.C. Gen. Stat. § 105-317(a) does not require a table of incremental and decremental values to be included in an SVSR.

---

4. We acknowledge that careful review of the sample of individual property records included as a supplement to the HCSV shows that it would be difficult for a property owner to ascertain the standard of value by which each individual parcel of land is valued, but that is not a proper subject of an appeal under N.C. Gen. Stat. § 105-290(c)(1). This decision does not estop taxpayer from raising the sufficiency of individual property records if he chooses to appeal the specific valuation of his property at a later time, but N.C. Gen. Stat. § 105-290(c)(1) does not allow him to raise issues based on N.C. Gen. Stat. § 105-317(b)(3) and (4) in this appeal.

**[7]** Finally, taxpayer argues that the PTC erred when it allowed expert testimony from Charles Graham, the Halifax County Tax Assessor, and from Joe Hunt as to the legal sufficiency of the HCSV. Assuming *arguendo* that the admission of testimony from these experts was error, taxpayer can show no prejudice because taxpayer's appeal was strictly based on the facial validity of the HCSV and our *de novo* review was conducted accordingly.

For the foregoing reasons, we conclude that taxpayer has not meet his burden of showing that the HCSV fails to comply with the statutory directives of the Machinery Act. The PTC did not err when it confirmed the 2007 Halifax County Schedule of Values. Accordingly, we affirm the Final Decision of the Property Tax Commission.

Affirmed.

Judges HUNTER and CALABRIA concur.