IN THE MATTER OF APPEAL OF FAMILY TREE FARM, LLC FROM THE DECISION OF THE HALIFAX COUNTY BOARD OF EQUALIZATION AND REVIEW CONCERNING THE VALUATION OF CERTAIN PROPERTY FOR TAX YEAR 2007

No. COA11-540

(Filed 7 February 2012)

**Taxation—real property—market value—present-use value— not arbitrary—no illegal method used**

The North Carolina Property Tax Commission did not err in affirming the decision of the Halifax County Board of Equalization and Review assigning a market value of $471,390.00 and a present-use value of $158,064.00 to property owned by plaintiff taxpayer. Taxpayer failed to meet its burden of showing that the County used an arbitrary or illegal method of valuation or that the assessment substantially exceeded the true value in money of the property.

Appeal by taxpayer from final decision entered 21 October 2010 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 12 October 2011.

*Family Tree Farm, LLC, pro se.*

*Parker Poe Adams & Bernstein LLP, by Charles C. Meeker and Katherine E. Ross, for Halifax County.*

ELMORE, Judge.

Family Tree Farm, LLC (taxpayer), appeals from the final decision of the North Carolina Property Tax Commission (Commission) affirming the decision of the Halifax County Board of Equalization and Review (Board) assigning a market value of $471,390.00 and a

present-use value of $158,064.00 to property owned by taxpayer. Because taxpayer has not shown that the Commission's decision was unsupported by competent, material, and substantial evidence or that the Commission's decision was arbitrary or capricious, we affirm the Commission's final decision.

Taxpayer owns 538.75 acres in a rural area of Halifax County. The property is part of the present-use value program (program), which gives preferential tax treatment to property owners who use their property for particular purposes. *See generally* N.C. Gen. Stat. § 105-277.2-277.7 (2011). The subject property has been designated as forestland under the program, meaning that the land is "part of a forest unit that is actively engaged in the commercial growing of trees under a sound management program." N.C. Gen. Stat. § 105-277.2(2) (2011). There is no question here as to the property's designation as forestland or its membership in the program. The sole issue before us is one of valuation.

Under the program, properties are taxed "on the basis of the value of the property in its present use" (present-use value) rather than its "true value." N.C. Gen. Stat. §§ 105-277.4(a), 105-277.6(b) (2011); *see also* N.C. Gen. Stat. § 105-283 (2011) ("[T]he words 'true value' shall be interpreted as meaning market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller[.]"). However, during revaluation years, counties reappraise subject properties at both the present-use value and the true value. N.C. Gen. Stat. § 105-277.6(b) (2011). "The difference between the taxes due on the present-use basis and the taxes that would have been payable" without the designation "are a lien on the real property" and are "carried forward in the records of the taxing unit or units as deferred taxes." N.C. Gen. Stat. § 105-277.4(c) (2011). When the property loses its program eligibility, "[t]he deferred taxes for the preceding three fiscal years are due and payable[.]" *Id.*

Here, taxpayer's property was appraised in 2007. The appraiser assessed the property's market value to be $471,390.00 and its present-use value to be $158,064.00. Taxpayer appealed the market value assessment, arguing that the County had used an unlawful valuation method to calculate the property's true market value, resulting in an inequitable and arbitrary allocation of the ad valorem property tax burden. Taxpayer asserted that the property's true market value was $188,500.00. Taxpayer based this calculation on a fifty percent

value adjustment based on the property's frequent flooding, legal restrictions, and topographical limitations. The Board heard taxpayer's appeal but decided that no change in value was justified. Taxpayer then appealed to the Commission, which affirmed the Board's decision.

On appeal to this Court, taxpayer argues that the Commission erred by affirming the Board's decision not to adjust the market value assessment. Taxpayer does not appeal the Board's present-use value assessment. We review Commission decisions pursuant to N.C. Gen. Stat. § 105-345.2, which provides, in relevant part, as follows:

> (b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> * * *
>
> (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2(c) (2011). "Questions of law receive *de novo* review, while issues such as sufficiency of the evidence to support the Commission's decision are reviewed under the whole-record test." *In re Appeal of Parker*, 191 N.C. App. 313, 316, 664 S.E.2d 1, 3 (2008) (quotations and citations omitted). "[T]he 'whole record' test is not a tool of judicial intrusion; instead, it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 674, 599 S.E.2d 888, 903-04 (2004) (quotations and citation omitted).

"[A]d valorem tax assessments are presumed correct," and "[t]his presumption places the burden upon the taxpayer to prove that the assessments are incorrect." *In re Appeal of Odom*, 56 N.C. App. 412, 413, 289 S.E.2d 83, 84-85 (1982) (citations omitted). On appeal, "the good faith of tax assessors and the validity of their actions are presumed[.]" *In re McElwee*, 304 N.C. 68, 75, 283 S.E.2d 115, 120 (1981).

[I]n order for the taxpayer to rebut the presumption [of correctness] he must produce competent, material and substantial evidence that tends to show that: (1) Either the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of evaluation; AND (3) the assessment *substantially* exceeded the true value in money of the property. Simply stated, it is not enough for the taxpayer to show that the means adopted by the tax supervisor were wrong, he must also show that the result arrived at is *substantially* greater than the true value in money of the property assessed, i.e., that the valuation was *unreasonably high.*

*Id.* at 75, 283 S.E.2d at 120 (quotations and citations omitted). Here, we note that taxpayer's appeal is, to some degree, hypothetical, because the assessment being challenged—the property's market value—would only be used to calculate deferred taxes should the property leave the program.

Taxpayer argues that the County tax assessor, Charles Graham, failed to account for certain restrictions that reduced the property's market value. Specifically, taxpayer argues that Graham should have considered (1) wetland restrictions imposed on the property by the federal Clean Water Act, the federal Food Security Act, and the North Carolina Sedimentation Pollution Act; (2) the property's frequent flooding; and (3) the property's topography and tract size. Taxpayer also argues that the valuation was based on false data and comparables as well as incorrect appraisal standards. Finally, taxpayer argues that the Use Value Advisory Board requires a value of $40.00 per acre of wasteland, rather than the value of $100.00 per acre of wasteland used by the County.

Our General Statutes set out guidelines for the proper appraisal of real property:

(a) Whenever any real property is appraised it shall be the duty of the persons making appraisals:

(1) In determining the true value of land, to consider as to each tract, parcel, or lot separately listed at least its advantages and disadvantages as to location; zoning; quality of soil; waterpower; water privileges; dedication as a nature preserve; conservation or preservation agreements; mineral, quarry, or other valuable deposits; fertility; adaptability for agricultural, timber-producing, commercial, industrial, or other uses; past income; probable future income; and any other factors that

may affect its value except growing crops of a seasonal or annual nature.

N.C. Gen. Stat. § 105-317(a)(1) (2011). "Restrictions on land use, including governmental restrictions, while not specifically included in N.C. Gen. Stat. § 105-317(a)(1), certainly fall within the catch-all category of 'any other factors that may affect its value except growing crops of a seasonal or annual nature[.]' " *Parker*, 191 N.C. App. at 320-21, 664 S.E.2d at 6 (quoting N.C. Gen. Stat. § 105-317(a)(1)).

The Commission made the following findings of fact with respect to the property's physical characteristics and government restrictions:

7.  When determining the assessed value for the subject woodland, Halifax County considered a riparian area consisting of 16 acres and adjusted the property's value accordingly. Halifax County did not adjust the value of the property to reflect 90 acres of wasteland when Appellant's Forest Management Plan makes no such reference to 90 acres of wasteland, and there were no documents or maps to show delineation for wasteland.

8.  . . . Halifax County did not consider governmental restrictions to determine the assessed value for the woodland when there were no documents or information showing that the property was subject to governmental restrictions, as of January 1, 2007.

Having reviewed the exhibits and transcripts, we must agree with the Commission. Taxpayer's Forest Management Plan makes no reference to either wasteland or government restrictions, with the exception of the Tar-Pamlico Buffer protection rules.

The plan includes a map showing the property's nine forest management blocks, and that map does not indicate any areas that are not part of a forest management block or that should otherwise be considered wasteland. The plan also makes no reference to lost productivity due to flooding. The plan, written in August 2006, indicates that any growth problems within forest management blocks resulted from overcrowding rather than flooding or ground saturation. The Halifax County 2007 Schedule of Values, which taxpayer unsuccessfully challenged and which this Court upheld, *see Parker*, 191 N.C. App. at 323, 664 S.E.2d at 7-8, states that parcels may be "subject to a loss of value due to the potential for periodic flooding when compared to similar lots in the area where this problem does not exist." However, the discounts apply only when flooding limits the property's development.

The discount recognizes "the degree of loss of value from none to rendering the parcel unbuildable for parcels in flood plain areas." However, here, there is no dispute that the subject property has been and will be used for forestry; the property has been maintained as an ongoing forestry operation since 1958. Taxpayer presented no evidence supporting its position that the Commission should have increased the amount of wasteland or discounted the value of the property because it is within the 100-year flood plain.

With respect to governmental restrictions, taxpayer has pointed to no restrictions that are actually in place besides the Tar-Pamlico Buffer protection rules. In its brief, taxpayer argues that the federal Clean Water Act and federal Food Security Act "severely restrict" its use of the subject property and thus the County should have accounted for those restrictions in its valuation. Even assuming that taxpayer is correct and these two federal acts do severely restrict the property's use, the restrictions do not appear to affect the land's use as forestland. By taxpayer's own descriptions of the acts, they would not affect the property's value as forestland. In addition, taxpayer cannot show that its property is differently situated with respect to these restrictions than any other property located in the same geographic region. Finally, taxpayer faces a similar obstacle with respect to the North Carolina Sedimentation Pollution Act, which specifically does not apply to land used for forestry. *See* N.C. Gen. Stat. § 113A-52.01 (2011).

With respect to the actual valuation, Graham, using his "knowledge of the land in that area" and his memory of sales in the area, decided that model number R132, with a woodland rate of $900.00 per acre, was appropriate. The models and their corresponding rates can be found in the Halifax County 2007 Schedule of Values. Graham also testified that he assigned seventeen acres[1] of the property as wastelands because he "could see standing water on that much of it." According to the Schedule of Values, the market value of wasteland in a woodland area with model number R132 is $100.00 per acre. Indeed, the market value of wasteland in any agricultural area is set at $100.00 per acre in the Schedule of Values. These values cannot now be challenged, and taxpayer has not shown either that the woodland rate of $900.00 per acre was inappropriate or that the number of acres characterized as wasteland was inappropriate.

---

1. According to the appraisal report, Graham designated 16.86 acres of the property as wasteland, which accounts for the discrepancy between the sixteen acres noted by the Commission and the seventeen acres noted by Graham in his deposition.

Accordingly, we conclude that taxpayer has not met its burden of showing that the County used an arbitrary or illegal method of valuation or that the assessment substantially exceeded the true value in money of the property. We affirm the decision of the Property Tax Commission.

Affirmed.

Judges BRYANT and STEPHENS concur.