IN THE MATTER OF: THE APPEAL OF W. E. KING, EDWARD A. GLASGOW, W. EARL PRIDGEN AND WALKER MATHIS, ALL OF ROCKY MOUNT, NASH COUNTY, N. C., FROM THE NASH COUNTY BOARD OF EQUALIZATION AND REVIEW FOR 1971, ALLEGING THAT THE SCHEDULES OF VALUE ADOPTED BY THE NASH COUNTY BOARD OF COMMISSIONERS ON DECEMBER 6, 1968, AND APPLIED IN THE APPRAISAL OF ALL REAL PROPERTY IN NASH COUNTY AS OF JANUARY 1, 1969, RESULTED IN INEQUALITY OF ASSESSMENT BETWEEN RURAL AND URBAN PROPERTY OWNERS IN NASH COUNTY

No. 28

(Filed 16 June 1972)

1. Taxation § 25— ad valorem taxes — value of property

For purposes of taxation, all property, real and personal, is required to be appraised, as far as practicable, at its true value in money, which means the amount for which such property can be sold in the usual manner of sale. G.S. 105-294.

2. Taxation § 25— ad valorem taxes — farmland — tobacco and peanut allotments

Tobacco and peanut allotments, held as incidents of the ownership of farmland, are among the factors to be considered in appraising such land for ad valorem taxation.

3. Taxation § 25— duties of County Board of Equalization and Review — appeal to State Board of Assessment

It is the duty of the County Board of Equalization and Review, when so requested, to hear any taxpayer owning taxable property in

the county with respect to the valuation of his property or of the property of others and to eliminate unlawful discriminations in the valuations of all properties in the county, G.S. 105-327(g); any taxpayer aggrieved by the order of the County Board of Equalization and Review may appeal to the State Board of Assessment. G.S. 105-329.

**4. Taxation § 25— ad valorem taxes — State Board of Assessment**

The State Board of Assessment is given the general supervisory power over the valuation and taxation of property throughout the State and authority to correct improper assessments. G.S. 105-275.

**5. Taxation § 25— order of State Board of Assessment — judicial review**

Upon appeal from the County Board of Equalization and Review, the State Board of Assessment has full authority to determine property valuations, including the standard uniform schedules of values required by G.S. 105-295 to be used in the appraisal of real property within the county, and its orders with reference to such valuations and standards of value are final and conclusive, subject only to judicial review for errors of law or abuse of discretion.

**6. Taxation § 25— State Board of Assessment — ad valorem taxes on farmlands — increase in valuation of tobacco and peanut allotments**

The superior court did not err in overruling a county's exceptions to an order of the State Board of Assessment revising the ad valorem taxation schedule for farmlands in Nash County by increasing the valuation of tobacco allotments from 40 cents per pound to 80 cents per pound and peanut allotments from $150 per acre to $300 per acre.

**7. Costs § 1— attorneys' fees as part of costs**

In the absence of statutory authority therefor, a court may not include an allowance of attorneys' fees as part of the costs recoverable by the successful party to an action or proceeding.

**8. Costs § 1; Taxation § 25— tobacco and peanut allotments — proceeding before State Board of Assessment — increase in valuation — costs — attorneys' fees**

The superior court properly denied taxpayers' motion for an allowance of their attorneys' fees as part of the costs of their successful action before the State Board of Assessment to increase for ad valorem taxation the valuation of tobacco allotments from 40 cents per pound to 80 cents per pound and the valuation of peanut allotments from $150 per acre to $300 per acre.

Justice Moore did not participate in the consideration or decision of this case.

CROSS appeals by Nash County and by the named taxpayers from *Cowper, J.,* at the October 1971 Civil Session of NASH, heard prior to determination by the Court of Appeals.

In re King

Under the Machinery Act, Nash County was required to revalue for taxation all real property in the county as of 1 January 1969. The Board of Commissioners employed the appraisal firm of Carroll-Phelps Company to assist in the revaluation. The work of appraisal began in November 1967. At a public meeting on 15 November 1968, the Board of Commissioners approved schedules of values recommended by the appraisal firm and by the Tax Supervisor for use in the appraisal of all real property in the county. These schedules included base acreage values for the various types and qualities of farmland. In addition, tobacco allotments were valued at 80¢ per pound and peanut allotments at $300 per acre. Thus, under these schedules, farmland would be appraised for taxes by applying to the several classifications of land contained in the farm the respective base acreage values and then adding the value of the tobacco allotment, or the peanut allotment, in accordance with such value schedules therefor. To such appraisals the assessment ratio would be applied. The result would be the tax valuation to which the county tax rate would be applied.

Following widespread protests by the owners of farmlands, the Board of Commissioners again met on 6 December 1968. After hearing statements by those in attendance, the Board rescinded its resolution of 15 November 1968 and adopted a revised schedule for farmland. The revised schedule contained the same base acreage values for the various types and qualities of farmland but reduced the value of tobacco allotments to 40¢ per pound and the value of peanut allotments to $150 per acre.

On 31 December 1968, the named taxpayers who are parties to the present appeal, owners of urban property in the county, brought an action in the superior court alleging that the revised schedule, so adopted by the Board of Commissioners on 6 December 1968, would result in the gross undervaluation of farmland in Nash County and would discriminate against the owners of urban property in the county. In that action they sought and obtained from the superior court a writ of mandamus directing the Board of Commissioners and the Tax Supervisor to revalue all real property in the county at its true value in money, and an injunction to restrain them from assessing property for taxation according to the schedule of values so adopted by the Board on 6 December 1968. On appeal,

the Supreme Court reversed on the ground that the plaintiff taxpayers had not exhausted the administrative remedy provided by G.S. 105-327, G.S. 105-329 and G.S. 105-275(3). *King v. Baldwin,* 276 N.C. 316, 172 S.E. 2d 12. In so ruling, the Supreme Court stated that if the Board of Commissioners had failed to value rural land in Nash County at its true value in money, the proper procedure to be pursued by the plaintiff taxpayers was to complain to and request a hearing by the County Board of Equalization and Review and, if dissatisfied with the action taken by it, to appeal to the State Board of Assessment.

Pursuant to the direction so given by the Supreme Court, the named taxpayers, in due time, filed their complaint with the Nash County Board of Equalization and Review. From its decision that no changes should be made in the property valuations, they appealed to the State Board of Assessment which heard the matter for three days in March 1971. The evidence presented at that hearing was essentially the same as that presented to the superior court in the former action, which is summarized in detail in the opinion of the Supreme Court in *King v. Baldwin, supra,* and will not be repeated here.

On 24 June 1971, the State Board of Assessment entered its decision setting forth its findings of fact and conclusions of law, including the following:

### FINDINGS OF FACT

"(9) That the farmland schedule adopted by the Board of Commissioners on December 6, 1968, provided for the valuation of rural property in accordance with the same base acreage values as the schedule approved on November 15, 1968, but reduced the valuation of tobacco allotments from 80¢ per pound to 40¢ per pound and peanut allotments from $300 per acre to $150 per acre.

"(10) That the application of the farmland schedule adopted by the Board of Commissioners on December 6, 1968, resulted in the valuation of rural land in the County at approximately 65% of its value, based on the fourteen sales. [These were fourteen bona fide farmer to farmer sales studied by the appraising company in arriving at its schedule of values.]

In re King

"(11) That with respect to urban, residential, commercial and industrial land and improvements, the application of the schedule of values recommended by the tax supervisor and the appraisal firm and adopted by the Board of Commissioners on November 15, 1968, resulted in the valuation of such properties in the range of 85% to 90% of their value based on sales of comparable properties.

\* \* \*

"(13) That from November 15, 1968, to December 6, 1968, when the farmland schedule was reduced as aforesaid, neither the tax supervisor nor the appraised [sic] firm furnished any additional information to the Board of Commissioners.

\* \* \*

"(17) That the action of the Board of Commissioners in reducing the farmland schedule previously adopted was based primarily upon their concern for the unfavorable outlook for tobacco farming and also on the ability of farm owners to pay their taxes.

\* \* \*

CONCLUSIONS OF LAW

"(6) There is no evidence before this Board to support a conclusion that the decision of the Board of Commissioners on December 6, 1968, was based upon any reliable information which they had not considered when they approved the recommended schedule on November 15, 1968.

\* \* \*

"(9) There was some disparity between the levels of appraisal in the urban and rural schedules approved by the Board of Commissioners on November 15, 1968, if sales prices alone were to be considered. Taking all of the factors into account, however, we conclude that the application of the schedules approved on November 15, 1968, would have resulted in a reasonable degree of uniformity in the appraisal of all types of property in the County. We conclude that this is not true of the reduced schedules adopted on December 6, 1968."

The decision and order of the State Board of Assessment was that the Nash County Board of Commissioners revalue all

farmland in the county at its true value in money as of 1 January 1969 by applying the schedules approved by the Board of Commissioners at its meeting on 15 November 1968. That is, the State Board of Assessment ordered the Board of Commissioners to increase the valuation of tobacco allotments from 40¢ to 80¢ per pound and the valuation of peanut allotments from $150 to $300 per acre, the said order to take effect as of 1 January 1972.

Both the county and the complaining taxpayers filed petitions for judicial review in the Superior Court of Nash County, the purpose of the petition of the complaining taxpayers, as modified in the superior court, being to procure from the court an order directing that they recover, as part of the costs in this matter, reasonable counsel fees.

The superior court being of the opinion that "the Findings of Fact and Conclusions of Law by the North Carolina State Board of Assessment are correct and based upon competent, material and substantial evidence in view of the entire record as submitted," affirmed the order of the State Board of Assessment, after making a modification therein not pertinent to this appeal, and denied the motion of the complaining taxpayers for an allowance of their attorneys' fees as part of the court costs. From the judgment so entered, both the county and the complaining taxpayers appealed.

Upon motion of the county, the superior court entered a further order staying its judgment and the order of the State Board of Assessment pending the review of the matter on appeal. The said stay order was vacated by the Supreme Court on 7 January 1972 and the appeal was transferred from the Court of Appeals to the Supreme Court for initial appellate review.

*Keel & Lamar, by James W. Keel, Jr., for Nash County.*

*Battle, Winslow, Scott & Wiley, P.A., by Robert M. Wiley; and Biggs, Meadows & Batts, by Frank P. Meadows, Jr., for taxpayers.*

*Attorney General Morgan and George W. Boylan, Associate Attorney, Amicus Curiae.*

---

**In re King**

---

LAKE, Justice.

*Appeal By The County*

References herein to the General Statutes relate, both as to section number and as to content, to statutes in effect prior to the 1971 revision of the Machinery Act.

[1, 2] For purposes of taxation, all property, real and personal, is required to be appraised, as far as practicable, at its true value in money, which means the amount for which such property can be sold in the usual manner of sale. G.S. 105-294. The date of valuation of the property here in question is 1 January 1969. G.S. 105-278, G.S. 105-280. In the case of farmland, the property to be appraised is the tract of land but, in making such appraisal, all of its attributes and appurtenant rights are to be considered, together with other factors which may affect its value. G.S. 105-295. These include the allocations to such land of rights to produce thereon crops, the production of which is restricted by law. Thus, the tobacco and peanut allotments, held as incidents of the ownership of farmland in Nash County, are among the factors to be considered in appraising such land for ad valorem taxation.

[3] The purpose of the statutory requirement that all property be appraised at its true value in money is to assure, as far as practicable, a distribution of the burden of taxation in proportion to the true values of the respective taxpayers' property holdings, whether they be rural or urban. It is the duty of the County Board of Equalization and Review, when so requested, to hear any taxpayer owning taxable property in the county with respect to the valuation of his property or of the property of others and to eliminate unlawful discriminations in the valuations of all properties in the county. G.S. 105-327(g). If such taxpayer is aggrieved by the order of the County Board of Equalization and Review, he may appeal to the State Board of Assessment. G.S. 105-329.

[4] Upon such appeal, the State Board of Assessment "shall hear all the evidence or affidavits offered by the appellant, appellee and the board of county commissioners, shall reduce, increase, or confirm the valuation fixed by the board of equalization and review and enter it accordingly and shall deliver to the clerk of the board of county commissioners a certified copy of such order, which valuation shall be entered upon the

fixed and permanent tax records *and shall constitute the valuation for taxation."* (Emphasis added.) G.S. 105-329; *King v. Baldwin, supra.* The State Board of Assessment is given general supervisory power over the valuation and taxation of property throughout the State and authority to correct improper assessments. G.S. 105-275.

**[5]** Thus, upon appeal from the County Board of Equalization and Review, the State Board of Assessment has full authority to determine property valuations, including the standard uniform schedules of values required by G.S. 105-295 to be used in the appraisal of real property within the county. Its orders with reference to such valuations and standards of value are final and conclusive, subject only to judicial review for errors of law or abuse of discretion. G.S. 143-315; *King v. Baldwin, supra; In Re Appeal of Broadcasting Corp.,* 273 N.C. 571, 160 S.E. 2d 728.

**[6]** The county assigns as error the overruling by the superior court of its several exceptions to the order of the State Board of Assessment. We have considered each of these and find therein no basis for reversal of the order of the Board, pursuant to G.S. 143-315. No useful purpose would be served by a discussion of these exceptions individually.

### Appeal By The Complaining Taxpayers

**[7]** The general rule in this State is that, in the absence of statutory authority therefor, a court may not include an allowance of attorneys' fees as part of the costs recoverable by the successful party to an action or proceeding. *Hoskins v. Hoskins,* 259 N.C. 704, 131 S.E. 2d 326; *Rider v. Lenoir County,* 238 N.C. 632, 78 S.E. 2d 745; *Horner v. Chamber of Commerce,* 236 N.C. 96, 72 S.E. 2d 21; *Trust Co. v. Schneider,* 235 N.C. 446, 70 S.E. 2d 578. G.S. 6-21 and G.S. 6-21.1 provide for the allowance for attorneys' fees as part of the costs in certain types of actions or proceedings. The present proceeding is not one of those.

The complaining taxpayers rely upon *Horner v. Chamber of Commerce, supra.* In that case, the plaintiff, a taxpayer of the City of Burlington, on behalf of himself and other taxpayers, brought suit to compel repayment to the city of funds unlawfully contributed by it to the Chamber of Commerce. The action was successful and the funds were repaid into the city treasury.

This Court held that, under those circumstances, the superior court "has implied power in the exercise of a sound discretion to make a reasonable allowance, *from the funds actually recovered,* to be used as compensation for the plaintiff taxpayers' attorney fees." (Emphasis added.)

In *Rider v. Lenoir County, supra,* this Court, speaking through Justice Barnhill, later Chief Justice, concerning the decision in *Horner v. Chamber of Commerce, supra,* said:

> "The rule as there stated comes to this: When, in an action instituted by a taxpayer to recover a fund which has been unlawfully or wrongfully expended by a municipality, it is made to appear that (1) the fund was in fact wrongfully expended, (2) the governing board of the municipality refused, on demand, to institute an action to recover the same, (3) as a result of which the taxpayer instituted his action to recover *for the benefit of the citizens of the municipality,* and (4) obtained judgment (5) which has been paid, in whole or in part, and the fund is thus restored to the public treasury, the court may allow plaintiff expense money to the extent of reasonable attorney fees, to be paid out of the fund so recovered." (Emphasis added.)

In the *Horner Case, supra,* the Court, speaking through Justice Johnson, said:

> "[W]hile ordinarily attorney fees are taxable as costs only when expressly authorized by statute [citations omitted], nevertheless, the rule is well established that a court of equity, or a court in the exercise of equitable jurisdiction, may in its discretion, and without statutory authorization, order an allowance for attorney fees to a litigant who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund or of common property, or who has created at his own expense or brought into court a fund which others may share with him. * * *

> "This 'rule rests upon the ground that where one litigant has borne the burden and expense of the litigation that has inured to the benefit of others as well as to himself, *those who have shared in its benefits should contribute to the expense.*' 14 Am. Jur., Costs, Sec. 74." (Emphasis added.)

[8] The present proceeding is clearly distinguishable from the Horner case. First, in this matter no fund has been recovered for the benefit of the county. While the total valuation of taxable property in the county has been increased, this does not necessarily mean that more funds will be paid into the county treasury. The Board of County Commissioners may elect to reduce the tax rate. Presumably, this is the result which the complaining taxpayers hoped to achieve by this proceeding. Second, the proceeding has resulted in no benefits to a large segment of the taxpayers of Nash County, namely, the owners of farmlands. On the contrary, their taxes will be increased as a result of the complainants' victory in this proceeding. Those who will share in the benefits are the owners of urban property in the county. But they are not, as such, parties to this proceeding and to order the county to pay a fee to the complainants' attorneys as part of the court costs would impose the burden thereof not upon owners of urban property only but upon all taxpayers.

The denial of the motion for allowance of attorneys' fees was, therefore, proper.

Affirmed.

Justice MOORE did not participate in the consideration or decision of this case.