IN THE MATTER OF: THE APPEAL OF EDWIN PARKER, CHARLES HARDEN, J. B. DAVENPORT, III, J. A. DILDAY, R. E. DILDAY, VERNON COBB, ROBERT L. HOGGARD, HERBERT JENKINS, JR., G. D. PERRY, DAVID ASKEW, BRYANT SAVAGE, HURRON FREEMAN, RHODES BOND, JR., AND C. B. GRIFFIN, JR.

No. 8410PTC1146

(Filed 3 September 1985)

**Taxation § 25.7— ad valorem taxation—same true value and use value schedules**

The Property Tax Commission erred in allowing the true value schedule and the use value schedule used in appraising real property in Bertie County for ad valorem taxation to be the same with certain exceptions because G.S. 105-277.6(b) and (c) require that the true value schedule and the use value schedule be determined separately.

APPEAL by petitioners from a final decision of the North Carolina Property Tax Commission entered 23 May 1984. Heard in the Court of Appeals 4 June 1985.

This is a proceeding under the Machinery Act, G.S. 105-271 through G.S. 105-395. On 1 August 1983 the Board of Commissioners of Bertie County adopted both the market value and the present use value schedule of values, standards and rules to be used in appraising real property in Bertie County for the octennial revaluation to be effective 1 January 1984. The 1 August 1983 meeting was the culmination of numerous meetings with the county tax supervisor concerning the schedule of values for Bertie County. Prior to this meeting, the tax supervisor had submitted to the Commissioners voluminous documentation and a proposed true value schedule and a proposed use value schedule. At the 1 August 1983 meeting, the Commissioners voted (i) to reduce the market or true value schedule by twenty-five percent (25%) across the board and (ii) to adopt the same values for both the market value schedule and the use value schedule. Notice of this action by the Commissioners was published beginning 11 August 1983 in the Bertie *Ledger-Advance,* a newspaper having general circulation in Bertie County. Thereafter on 1 September 1983, pursuant to G.S. 105-277.6 and 105-317(c), petitioners gave notice of appeal to the North Carolina Property Tax Commission (hereinafter Commission) sitting as the State Board of Equalization and Review. The appeal was heard before the Commission beginning 13 December 1983 and ending 20 December 1983. On 6

January 1984 the Commission issued its Memorandum of Decision and the Final Decision was entered 23 May 1984.

The schedule of true values adopted by the Bertie County Board of Commissioners contained a Note with eight subparts lettered A through H. Note F was designed to appraise properties having factors that made them more valuable or less valuable than other property and stated:

The above schedule will apply where no other factor[s] exist that enhance the value. In areas of commercial or industrial sites, tracts located and suitable (where soil type permits development) for residential development, excessive road frontage, useable river frontage, and well located small tracts, or any other factor that affects the land value will be priced to reflect the proper value. Also factors that affect tracts located in areas that make them unfeasible to manage and practically unaccessible will be used to reduce the price to reflect proper value. Effective front foot prices will be priced to a maximum of $300 per front foot.

Note G stated:

Marshall Valuation Service manual will be used as a guide to price all commercial and industrial improvements less 25% to reflect economic conditions locally (Bertie County).

The use value schedule also contained a Note with six subparagraphs lettered A through F, none of which are pertinent to this appeal.

On appeal the Commission found that the action of the Bertie County Board of Commissioners reducing all values twenty-five percent was arbitrary and that Notes F and G should be modified as follows:

F. This schedule shall be the basis of appraisal of all rural land in Bertie County. The acreage prices shown reflect the value of rural land in the county which does not have a greater value for purposes other than agricultural, horticultural or forestry uses. In areas of the county where the value of the land is enhanced by non-agricultural influences, appraisals shall be increased to reflect such influences. These

influences shall include, but not be limited to, water frontage, excessive road frontage, size, or demand for more intensive uses such as residential, recreational, commercial or industrial development.

Road frontage rates and building site values will be derived from the figures entered by the Bertie County Tax Office on the Bertie County map prepared by the North Carolina Department of Transportation, identified as Bertie County Road and River Frontage Guide, and hereby incorporated into this schedule. The road frontage rates will apply to a depth of 200 feet unless the property is not that deep. If the depth is less than 200 feet, the appraiser shall take that fact into consideration in applying the road frontage factor.

At the completion of the reappraisal, the Bertie County Tax Office shall place the waterfront values applied to waterfront property on the map referred to above.

Similarly, in areas of the county where negative influences exist that cause the land to be less valuable for agricultural, horticultural, or forestry uses, such as inadequate access, poor topography or drainage problems, the basic prices shall be reduced to reflect these factors.

G. Marshall Valuation Service manual will be used as a guide to price all commercial and industrial improvements. The pricing schedules for all other improvements shall be as recommended by the Bertie County Tax Supervisor.

The Commission found as fact that (i) the 460,000 acres of land in Bertie County consists primarily of agricultural land and timberland, (ii) there is very little industrial activity in Bertie County and (iii) if a parcel of property is not subject to outside influences which are related to a different use, the use value of that property and its market value are the same. Based on these and other findings, the Commission further ordered that the present use value schedule adopted by the Bertie County Commissioners be modified to reflect the same values as those included in the market value schedule as modified by the Commission's final decision without any change in the notes as originally adopted.

Petitioners appealed to this Court pursuant to G.S. 105-345.

*Josey, Josey and Hanudel by C. Kitchin Josey for taxpayer-appellants.*

*John R. Jenkins, Jr., for respondent-appellee.*

*Robert B. Broughton, General Counsel for North Carolina Farm Bureau Federation, filing an Amicus Curiae Brief.*

PARKER, Judge.

We note at the outset that petitioners have flagrantly violated Appellate Rule 28 by failing to bring forward in their brief assignments of error with exceptions grouped thereunder. Nevertheless, in the exercise of our discretion, pursuant to Appellate Rule 2, we will consider the appeal; however, all exceptions not herein discussed are deemed abandoned.

The question presented for review before this Court is whether the decision of the North Carolina Property Tax Commission as it affected the ad valorem tax present use value schedule and the ad valorem tax true or market value schedule adopted by the Bertie County Board of Commissioners was (i) unsupported by competent, material and substantial evidence in view of the entire record as submitted, or (ii) arbitrary and capricious or (iii) affected by other errors of law. G.S. 105-345.2. For the reasons herein discussed as to that part of the Property Tax Commission's decision finding the adoption of the true value schedule to be arbitrary on account of the twenty-five (25%) percent reduction in the proposed true value schedule, we affirm; however, as to that part of the decision permitting the true value schedule and the use value schedule to be the same except for Notes F and G as modified on the true value schedule, we reverse.

The statutory scheme for taxation of property qualifying for present use value treatment as defined in G.S. 105-277.2 and 277.3 is a tax deferment. General Statute 105-277.4(c) provides:

> Property meeting the conditions herein set forth shall be taxed on the basis of the value of the property for its present use. The difference between the taxes due on the present-use basis and the taxes which would have been payable in the absence of this classification, together with any interest, penalties or costs that may accrue thereon, shall be a lien on

the real property of the taxpayer as provided in G.S. 105-355(a). The difference in taxes shall be carried forward in the records of the taxing unit or units as deferred taxes, but shall not be payable, unless and until [certain disqualifying conditions occur].

The statutory provision which, in our view, mandates that the true value schedule and the use value schedule be determined separately is G.S. 105-277.6 which provides:

(b) In revaluation years, as provided in G.S. 105-286, *all property entitled to classification under G.S. 105-277.3 shall be reappraised at its true value in money and at its present use value* as of the effective date of the revaluation. The two valuations shall continue in effect and shall provide the basis for deferred taxes until a change in one or both of the appraisals is required by law. (Emphasis added.)

(c) To insure uniform appraisal of the classes of property herein defined in each county, the tax supervisor, at the time of the general reappraisal of all real property as required by G.S. 105-286, *shall also prepare a schedule of land values, standards and rules which, when properly applied, will result in the appraisal of the property at its present-use value.* Such schedule, standards and rules shall be used by the tax supervisor to appraise property receiving the benefit of this classification until the next general revaluation of real property in the county as required by G.S. 105-286. . . . The schedule of values, standards and rules shall be subject to all of the conditions set forth in G.S. 105-317(c), (c)(1) and (c)(2) relating to the adoption of schedules, standards and rules in revaluation years. (Emphasis added.)

Under the plain language of the statute, the Board of County Commissioners was required to adopt a separate market value schedule and use value schedule. The utilization of a note such as Note F to appraise properties having enhancing factors is not consistent with the stated purpose of the statute to "insure uniform appraisal." Without an objective standard by which to determine the tax to be deferred, taxpayers who would qualify for present use value tax treatment are conceivably deprived of the benefit of the classification. This lack of a uniform standard affects a substantial right and is clearly prejudicial. G.S. 105-345.2(c). We

reiterate that petitioners are challenging the schedule and not the assessed value of a particular parcel.

The Bertie County Tax Supervisor testified that he correlated the income approach and the market approach based on thirty-one comparable sales. The Commission, relying on *In re McElwee*, 304 N.C. 68, 283 S.E. 2d 115 (1981), ruled that the income approach was not the sole appropriate method for determining present use value. While *In re McElwee, supra*, does not prohibit a correlation of the market and income approaches to determine present use value, the situation in Bertie County, where the highest and best use of much land is in fact for agricultural purposes or timber land, may well illustrate the necessity for using the capitalization approach for determining present use value. As stated in *McElwee, supra:*

> [I]n determining the *present use value* of agricultural, horticultural and forest land as contemplated by G.S. 105-277.2(5) . . . the criterion is that both buyer and seller shall "have reasonable knowledge of the capability of the property to produce income *in its present use*. . . ." (Emphasis added.) In this instance, the clear legislative intent is that property be valued on the basis of its ability to produce income in the manner of its present use. All other uses for which the property might be employed and the many factors enunciated in G.S. 105-317(a) are irrelevant and immaterial. The focus of the appraisal is a narrow one: If the use of the property subject to present use valuation continues as at present what income will the property produce? *Id.* at 89, 283 S.E. 2d at 128.

For the foregoing reasons, we hold that there was error of law in the Commission's final decision and we remand the case to the Property Tax Commission for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Judges ARNOLD and MARTIN concur.