IN THE MATTER OF: APPEAL OF: JOSHUA McLAMB FROM THE ORDER OF THE SAMPSON COUNTY BOARD OF COMMISSIONERS ADOPTING THE SCHEDULE OF VALUES, STANDARDS AND RULES FOR THE 2011 GENERAL REAPPRAISAL

No. COA11-1007

(Filed 7 February 2012)

**1. Taxation—real property—present-use schedule of values —quality of soil**

The Property Tax Commission sitting as the State Board of Equalization and Review did not err in confirming Sampson County's present-use schedule of values (SOV) for the 2011 general reappraisal of.real property. Petitioner's arguments that the County's present-use SOV was illegal because it disregarded N.C.G.S. § 105-317(a)'s mandate that the County consider the "quality of soil" in making its assessment was overruled.

**2. Taxation—real property—present-use schedule of values —Use-Value Manual**

The Property Tax Commission sitting as the State Board of Equalization and Review did not err in confirming Sampson County's present-use schedule of values (SOV) for the 2011 general reappraisal of real property. Contrary to petitioner's argument, the County was not required to adopt the values as set forth in the Use-Value Manual in its present-use SOV.

**3. Taxation—real property—present-use schedule of values —proportional share of tax burden**

The Property Tax Commission sitting as the State Board of Equalization and Review did not err in confirming Sampson

County's present-use schedule of values (SOV) for the 2011 general reappraisal of real property. The County's present-use SOV did not fail to value individual property within the county so that each parcel bore its proportional share of the tax burden.

**4. Taxation—real property—present-use schedule of values—not illegal based on statute**

The Property Tax Commission sitting as the State Board of Equalization and Review did not err in confirming Sampson County's present-use schedule of values (SOV) for the 2011 general reappraisal of real property. Petitioner's argument failed to show that the present-use SOV was illegal based on N.C.G.S § 105-283 and his argument was overruled.

**5. Taxation—real property—present-use schedule of values—procedure for adoption of values not arbitrary**

The Property Tax Commission sitting as the State Board of Equalization and Review did not err in confirming Sampson County's present-use schedule of values (SOV) for the 2011 general reappraisal of real property. Contrary to petitioner's argument, the substantial evidence before the Court of Appeals did not demonstrate an arbitrary procedure in the adoption of the County's present-use SOV.

**6. Taxation—real property—present-use schedule of values—corrective procedure—not arbitrary or capricious**

The Property Tax Commission sitting as the State Board of Equalization and Review did not err in confirming Sampson County's present-use schedule of values (SOV) for the 2011 general reappraisal of real property. Petitioner failed to carry his burden to show that the County's present-use SOV "corrective procedure" was arbitrary or capricious.

**7. Evidence—exclusion of witness—exclusion of maps—taxes on real property—not prejudicial**

The Property Tax Commission sitting as the State Board of Equalization and Review did not err in confirming Sampson County's present-use schedule of values for the 2011 general reappraisal of real property. Petitioner failed to show how the trial court's exclusion of one of his witnesses and some maps was prejudicial to his case.

**IN RE APPEAL OF McLAMB**

[218 N.C. App. 485 (2012)]

*Appeal by petitioner Joshua McLamb from final decision entered 25 February 2011 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 14 December 2011.*

*Everett Gaskins & Hancock, LLP, by E.D. Gaskins, Jr. and The Wooten Law Firm, by Louis E. Wooten, III, for petitioner-appellant Joshua McLamb.*

*Daughtry, Woodard, Lawrence & Starling, LLP by Annette C. Chancy and William Joel Starling, Jr., for respondent-appellee Sampson County.*

STROUD, Judge.

Joshua McLamb ("petitioner") appeals from the decision of the Property Tax Commission sitting as the State Board of Equalization and Review confirming Sampson County's ("respondent") present-use schedule of values for the 2011 general reappraisal. For the following reasons, we affirm the Commission's decision.

## I. Background

On 15 November 2010, the Sampson County Board of Commissioners adopted the 2011 Sampson County Schedule of Values for qualified present-use agricultural and forestry land (referred to herein as the "present-use SOV"). The present-use SOV set the agricultural land values for major land resource areas 133A and 153A at $657.00 and $630.00 per acre, respectively; for forestry land, the County's present-use SOV set a value of $382.00 per acre for both major land resource areas 133A and 153A. Petitioner filed a notice of appeal with the North Carolina Property Tax Commission ("the Commission") pursuant to N.C. Gen. Stat. § 105-290(c) on 13 December 2010. The Tax Commission heard petitioner's appeal on 27 January 2011. The Tax Commission issued its final decision on 25 February 2011, confirming the County's present-use SOV. Petitioner timely appealed to this Court pursuant to N.C. Gen. Stat. § 105-345.

On appeal, petitioner contends that the Commission erred in its decision, as the 2011 Sampson County present-use SOV (1) did not consider soil quality of each parcel in determining the present-use value of agricultural and forestry property, in violation of N.C. Gen. Stat. §§ 105-317(a) and 105-277.7; (2) is arbitrary and capricious because it is not supported by evidence in the record; (3) does not achieve fairness with the "corrective procedure[;]" and (4) does not "value present use land as far as practical[,]" in violation of N.C. Gen.

Stat. § 105-283. Petitioner also contends that the Commission's decision to exclude his expert witness and the USDA soil maps was an abuse of discretion and resulted in substantial prejudice to his case.

II.  Standard of Review

In reviewing an appeal from the North Carolina Property Tax Commission, this Court

> may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> (1)  In violation of constitutional provisions; or
>
> (2)  In excess of statutory authority or jurisdiction of the Commission; or
>
> (3)  Made upon unlawful proceedings; or
>
> (4)  Affected by other errors of law; or
>
> (5)  Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or
>
> (6)  Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2(b) (2009). "Questions of law receive *de novo* review, while issues such as sufficiency of the evidence to support the Commission's decision are reviewed under the whole-record test." *In re Murray*, 179 N.C. App. 780, 783, 635 S.E.2d 477, 479 (2006) (citation and quotation marks omitted). Further,

> [i]n evaluating whether the record supports the Commission's decision, "this Court must evaluate whether the decision is supported by substantial evidence, and if it is, the decision cannot be overturned." *In re Appeal of Interstate Income Fund I*, 126 N.C. App. 162, 165, 484 S.E.2d 450, 452 (1997) (citing *In re Appeal of Perry-Griffin Found.*, 108 N.C. App. 383, 394, 424 S.E.2d 212, 218 (1993)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State ex rel. Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977).

*Id.* Additionally, "[i]t is the responsibility of the Commission to determine the weight and credibility of the evidence presented." *In re Appeal of Owens*, 144 N.C. App. 349, 352, 547 S.E.2d 827, 829 (emphasis in original), *appeal dismissed and disc. rev. denied*, 354 N.C. 361, 556 S.E.2d 575 (2001). Additionally, in appeals from a Tax Commission's decision regarding the validity of a county's present-use value schedule, "the good faith of tax assessors and the validity of their actions are presumed[.]" *In re McElwee*, 304 N.C. 68, 75, 283 S.E.2d 115, 120 (1981) (citing *In re Appeal of Amp, Inc.*, 287 N.C. 547, 562, 215 S.E.2d 752, 761-62 (1975)); *In re Appeal of Parker*, 191 N.C. App. 313, 316, 664 S.E.2d 1, 3 (2008).

> [I]n order for the taxpayer to rebut the presumption he must produce "competent, material and substantial" evidence that tends to show that: (1) Either the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation; AND (3) the assessment *substantially* exceeded the true value in money of the property.

*AMP*, 287 N.C. at 563, 215 S.E.2d at 762 (emphasis in original). As petitioner's first and fourth arguments present questions of law, we apply a *de novo* review of those issues. *See Murray*, 179 N.C. App. at 783, 635 S.E.2d at 479. We have noted that "[i]n determining whether the Commission's decision is supported by competent, material and substantial evidence or arbitrary or capricious, we review the whole record." *In re Blue Ridge Mall LLC*, ____ N.C. App. ____, ____, 713 S.E.2d 779, 787 (2011). Therefore, we will apply the whole record test to petitioner's second and third arguments. We first address petitioner's first and fourth arguments.

### III.  Consideration of soil quality

Petitioner argues that Sampson County's present-use SOV "is illegal because it disregards the statutorily mandated critical factor: soil quality of each parcel is different and must be considered." Specifically, petitioner argues that the present-use SOV is illegal because it does not follow statutory mandates in N.C. Gen. Stat. § 105-317(a) and 105-277.7 and does not permit each parcel to carry its proportional share of the tax burden. Respondent counters that "there is no statutory obligation for the Commissioners to use soil quality to determine present-use value of land in its [present-use values.]"

N.C. Gen. Stat. § 105-283 (2009) mandates that "[a]ll property, real and personal, shall as far as practicable be appraised or valued at its true value in money[,]" and defines "true value" as the

market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of *all the uses* to which the property is adapted and for which it is capable of being used. . . .

(Emphasis added.) However, N.C. Gen. Stat. § 105-277.4(a) (2009) permits qualifying agricultural or forestland to be taxed "on the basis of the value of the property in its present use[.]"[1] N.C. Gen. Stat. § 105-277.2(5) (2009) defines "[p]resent-use value" as "[t]he value of land in its current use as agricultural land, horticultural land, or forest-land, based solely on its ability to produce income and assuming an average level of management. . . ."[2]

A. N.C. Gen. Stat. § 105-317(a) requirements

[1] Specifically, petitioner argues that the County's present-use SOV is illegal because it disregards N.C. Gen. Stat. § 105-317(a)'s mandate that the County must consider the "quality of soil" in making its assessment. Respondent argues that the County's present-use value meets the appraisal standards established by N.C. Gen. Stat. §§ 105-277.2(5) and 105-317(b), as it was based in part on the "2009 Cash Rent Study" contained in the "2011 Use-Value Manual for Agricultural, Horticultural and Forest Land" ("the manual") and in part on comments from the public regarding the economic climate. N.C. Gen. Stat. § 105-317(a) lists factors to consider in valuing land including "quality of soil[.]"[3] Yet the factors listed in N.C. Gen. Stat. § 105-317(a) do not address "present-use value[,]" but address only determinations as to "true value of land[.]" As noted above, present-

---

1. N.C. Gen. Stat. §§ 105-277.2, 105-277.3 and 105-277.4 set forth the qualifications and application process for present-use assessments.

2. The Sampson County present-use SOV makes no mention of "horticultural" land, but apparently treats any land that would be classified as "horticultural land[,]" as defined by N.C. Gen. Stat. §§ 105-277.2(3) and 105-277.3(a)(2), as "agricultural" land for purposes of the present-use SOV. Petitioner raises no argument regarding this substituted designation.

3. N.C. Gen. Stat. § 105-317(a)(1) states that "[i]n determining the true value of land, to consider as to each tract, parcel, or lot separately listed at least its advantages and disadvantages as to location; zoning; quality of soil; waterpower; water privileges; dedication as a nature preserve; conservation or preservation agreements; mineral, quarry, or other valuable deposits; fertility; adaptability for agricultural, timber-producing, commercial, industrial, or other uses; past income; probable future income; and any other factors that may affect its value except growing crops of a seasonal or annual nature."

use valuation operates as an exception to the requirement that real property "shall as far as practicable be appraised or valued at its true value in money." *See* N.C. Gen. Stat. § 105-283. In fact, "[t]he statutory scheme for taxation of property qualifying for present use value treatment as defined in G.S. 105-277.2 and 277.3 is a tax deferment." *In re Appeal of Parker*, 76 N.C. App. 447, 450, 333 S.E.2d 749, 752 (1985). *See* N.C. Gen. Stat. § 105-277.4(c) (stating that the "difference between the taxes due on the present-use basis and the taxes that would have been payable in the absence of this classification, . . . are a lien on the real property of the taxpayer as provided in G.S. 105-355(a)" and "must be carried forward in the records of the taxing unit or units as deferred taxes."). "Present use value" is often less than the "true value" of real property. *See In re Appeal of Parker*, 191 N.C. App. 313, 317, 664 S.E.2d 1, 4 (2008) (noting in its analysis that "real property may be taxed at its present-use value, an amount typically lower than its true value, if a taxpayer is able to show that the property qualifies for present-use valuation. N.C. Gen. Stat. § 105-277.4(a) (2005); [*In re Appeal of Whiteside Estates, Inc.*, 136 N.C. App. 360, 364, 525 S.E.2d 196, 198, *cert. denied*, 351 N.C. 473, 543 S.E.2d 511 (2000)]"). Our Supreme Court has further stated that

> the clear legislative intent is that property be valued on the basis of its ability to produce income in the manner of its present use. All other uses for which the property might be employed and the many factors enunciated in G.S. 105-317(a) are irrelevant and immaterial. The focus of the appraisal is a narrow one: If the use of the property subject to present use valuation continues as at present what income will the property produce?

*McElwee*, 304 N.C. at 89, 283 S.E.2d at 128. As respondent argues, the only statutory requirements for an assessment of present-use value are that it (1) be "based solely on its ability to produce income and assuming an average level of management[,]" *see* N.C. Gen. Stat. § 105-277.2(5), and (2) is "prepared and [is] sufficiently detailed to enable those making appraisals to adhere to them in appraising real property." N.C. Gen. Stat. § 105-317(b)(1) (emphasis added).[4] As noted above, the County's present-use SOV is presumed to be correct. *See*

---

4. N.C. Gen. Stat. § 105-317(b)(1) in pertinent part, states "[i]n preparation for each revaluation of real property required by G.S. 105-286, it shall be the duty of the assessor to see that: (1) Uniform schedules of values, standards, and rules to be used in appraising real property at its true value and at its *present-use value* are prepared and are sufficiently detailed to enable those making appraisals to adhere to them in appraising real property."

*McElwee,* 304 N.C. at 75, 283 S.E.2d at 120. Petitioner does not claim that the County's present-use SOV was not based on income or was not "sufficiently detailed to enable those making appraisals to adhere to them in appraising real property." *See* N.C. Gen. Stat. § 105-277.2(5); N.C. Gen. Stat. § 105-317(b)(1). As petitioner's argument fails to rebut the presumption by showing that the County's present-use SOV was illegal because it did not follow the factors in N.C. Gen. Stat. § 105-317(a), his argument is overruled. *See AMP, Inc.,* 287 N.C. at 563, 215 S.E.2d at 762.

B.  N.C. Gen. Stat. § 105-277.7 requirements

[2] Petitioner next contends that the County's present-use SOV is illegal because the "General Assembly specifically directs the Advisory Board to use soil quality in categorizing property for purposes of the [Present-use value] Manual" and since the County did not follow all of the manual's valuations based on the soil quality of each individual parcel, its present-use SOV is illegal. Respondent counters that the County did use values from "the 2011 Use Value Manual, which assess cash rental rates for various classes of soil[,]" in making its present-use SOV. Contrary to petitioner's argument, the County is not required to adopt the values as set forth in the manual in its present-use SOV. To assist the County in creating and approving a present-use valuation assessment, N.C. Gen. Stat. § 105-277.7 directs the creation of the North Carolina Use-Value Advisory Board ("the UVA Board"), stating that "[t]he Board must annually submit to the Department of Revenue a *recommended* use-value manual" which must include "estimated cash rental rates for agricultural lands and horticultural lands for the various classes of soils found in the State[;]" *"recommended* net income ranges for forestland furnished to the Board by the Forestry Section of the North Carolina Cooperative Extension Service[;]" capitalization rates of 9% for forestland and between 6 and 7% for agricultural land; "value per acre adopted by the Board for the best agricultural land[;]" and "[*r*]*ecommendations* concerning any changes to the capitalization rate for agricultural land and horticultural land and to the maximum value per acre for the best agricultural land and horticultural land based on a calculation to be determined by the Board[.]" N.C. Gen. Stat. § 105-277.7(a) & (c) (2009) (emphasis added). Pursuant to N.C. Gen. Stat. § 105-277.7 the UVA Board produced the "2011 Use-Value Manual for Agricultural, Horticultural and Forest Land" ("the manual"). As petitioner contends, the manual includes valuation determinations for agricultural and forestry land based on soil type, but it also states that the manual

is published yearly "to communicate the UVAB *recommended* present-use value rates and to explain the methodology used in establishing the *recommended* rates." (emphasis added). Petitioner's argument implies that since our General Statutes require the UVA Board to create the manual, and the manual bases its schedule on soil quality of individual parcels, then the County must follow the manual and base its present-use assessment on soil quality of individual parcels. However, as the above statutes and the portions of the manual clearly note, the manual merely gives "recommendations" to counties regarding their present-use valuation. Nothing in the manual and no statute requires the County to follow the manual in its evaluation. Indeed, if the manual's values were mandatory, there would be no need for the individual counties to adopt their own schedules of value, as the manual would establish the present-use value requirements for the whole State. Accordingly, petitioner's argument is overruled.

## C.  Proportional share of tax burden

[3]  Finally, petitioner citing *In re Appeal of Whittington*, 129 N.C. App. 259, 260-61, 498 S.E.2d 194, 196 (1998) and *In re King*, 281 N.C. 533, 539, 189 S.E.2d 158, 161 (1972), also argues that the County's present-use SOV is illegal because it fails to "value individual property within the county so that each parcel bears its proportional share of the tax burden." Yet *Whittington* is inapplicable as that case did not address a determination regarding "present-use" values but dealt with the consideration of whether tobacco allotments were to be considered a factor in determining the "true value" of real property pursuant to N.C. Gen. Stat. § 105-317(a). *See Whittington*, 129 N.C. App. at 260-61, 498 S.E.2d at 195-96. We also find *King* inapplicable as it addressed a determination as to the "true value" of real property and its ruling was based on a County tax assessment that occurred prior to 1973, when the current "present-use" valuation system was enacted. *See King*, 281 N.C. at 539-42, 189 S.E.2d at 161-63; N.C. Session Laws 1973-709, s. 1. As petitioner's argument fails to rebut the County's presumption by showing that the County's present-use SOV was illegal because it did not follow the factors in N.C. Gen. Stat. § 105-317(a) or follow the recommendations of the manual, his arguments are overruled. *See AMP*, 287 N.C. at 563, 215 S.E.2d at 762.

## IV.  Fair valuation

[4]  Petitioner next contends that respondent failed to "fulfill its statutory duty to endeavor to value present use land, as far as practical" in violation of N.C. Gen. Stat. § 105-283. Petitioner argues that the

USDA has "made it relatively easy for counties to take soil quality into account through the publication of the color coded and digitized [present-use value] Maps[;]" the County was aware of these maps and computer programs which could utilize these maps to determine present-use values for each individual parcel based on soil type; the adoption of a soil type valuation was "clearly feasible as other neighboring counties [such as Harnett and Pender Counties] have done so[;]" and the County's only excuse for not implementing a computer-based assessment and fulfilling its statutory duty was a lack of funds to implement the computer program. Respondent counters that "[t]here is no statutory obligation for Sampson County to employ all 'practicable' resources when determining present-use value" and evidence presented showed that present-use values based on digitized maps were not practicable as the technology costs to implement such a system would be over $100,000. As noted above, N.C. Gen. Stat. § 105-283 states, in pertinent part, that "[a]ll property, real and personal, shall as far as practicable be appraised or valued at its true value in money[,]" and goes on to define "*true value*[.]" (emphasis added). Therefore, any statutory requirements contained in N.C. Gen. Stat. § 105-283 would relate to a County's "true value" assessment. Here, as noted above, petitioner is appealing from an exception to true value assessment, the County's "present-use" assessment values, which are not based on a property's *true value* but on the income which it produces. *See* N.C. Gen. Stat. § 105-277.2(5). Therefore, N.C. Gen. Stat. § 105-283 would not be applicable. As petitioner's argument fails to rebut the County's presumption by showing that the present-use SOV was illegal based on N.C. Gen. Stat § 105-283, his argument is overruled. *See AMP*, 287 N.C. at 563, 215 S.E.2d at 762. We next turn to addressing petitioner's second and third arguments using the whole record test.

## V. Arbitrary and Capricious

[5] Petitioner next contends that the County used an arbitrary and capricious method in adopting its present-use SOV. Specifically, petitioner citing *Appeal of Land & Mineral Co.*, 49 N.C. App. 608, 614, 272 S.E.2d 878, 882 (1980), *disc. review denied*, 302 N.C. 397, 279 S.E.2d 351 (1981), argues that the County's present-use SOV is arbitrary and capricious because the rental rates used to create the county tax assessor's recommended present-use agricultural SOV and the County's adopted present-use agricultural SOV were less than the rental rates reported to Commissioners by the county manager; the County failed to gather data or conduct any independent studies "to

support the assumed rental and income rates it used" in making its present-use agricultural SOV; and the agricultural present-use SOV was reduced from the tax assessor's recommendation but the forestry present-use SOV was increased from the assessor's recommendation. Respondent contends that its agricultural present-use SOV is not arbitrary or capricious as it was based on "cash rental rates recognized [that] productivity level [based on] . . . geographic area (i.e., MLRA 133A and 153A)" from the manual, which was adjusted based on public comments regarding the economic conditions and the adopted present-use SOV "specifically provides that the value assessed can be adjusted pursuant to the UVAB guidelines upon presentation by the taxpayer of a soil study." Evidence in the record shows that in adopting the present-use SOV the Commissioners considered information in the 2011 Use-Value Manual, the tax assessor's recommendations, and input from residents and staff at County Board of Commissioners' meetings.

A. The manual

As noted above, the North Carolina Use-Value Advisory Board, pursuant to N.C. Gen. Stat. § 105-277.7, published the "2011 Use-Value Manual for Agricultural, Horticultural and Forest Land" ("the manual") in April 2010. The manual's foreword states that the General Assembly passed legislation in 1973 creating the present-use value program to keep "the family farm in the hands of the farming family" as economic development had caused an increase in the demand for land in the State and that demand lead to increased prices and assessed values for farmland, to the point that farmers "could not afford the increase in property values[.]" The manual also notes that the United States Department of Agriculture divided the State into six Major Land Resource Areas ("MLRA"), with a majority of Sampson County located in MLRA 133A, and a small portion at the southern end of the county located in MLRA 153A. *See* N.C. Gen. Stat. § 105-277.7(c)(2). The manual included recommended present-use schedules for agricultural and forestry land.

1. Recommended agricultural schedule

The manual includes data on agricultural rental rates and schedules of values [5] for each MLRA, including 133A and 153A, based on

---

5. The manual states that "Rents were divided by a capitalization rate of 6.5% to produce the Agricultural Schedule." *See* N.C. Gen. Stat. § 105-277.7(c)(3) (stating that "[t]he capitalization rate for agricultural land . . . must be no less than six percent (6%) and no more than seven percent (7%)."

three classifications of soil types: Class I, Best Soils; Class II, Average Soils; and Class III, Fair Soils.[6] These agricultural rental rates were based on a "2009 Cash Rent Study" of the whole state, conducted by the North Carolina Department of Agriculture, which specifically showed that the rental rates for the MLRA 133A section of Sampson County agricultural land were: $81.60 for High Productive soil; $58.40 for medium productive soil; and $41.80 for low productive soil.[7] As the small section of MLRA 153A located in Sampson County had fewer than 10 survey responses or reports, specific rental values for that area were included in the aggregate totals for MLRA 153A showing that average rents for MLRA 153A were: $70.10 for high productive soil; $51.00 for medium productive soil; and $38.40 for low productive soil.[8]

2. Recommended forestry schedule

The manual also listed data regarding net incomes and schedules of values[9] for forestry land for each MLRA, including 133A and 153A, but in contrast there were five soil type classifications for each MLRA: "Class I" through "Class V[.]" Information regarding these net incomes was provided to the Board by the North Carolina Cooperative Extension Service Forestry Section.[10] The manual also includes a section listing the type of soil in each MLRA in the State and the soil quality classification for each type of soil based on its use as agricultural or forestry land.

---

6. There was a class IV for "Non-Productive Soils" which was to be "appraised at $40.00 per acre" statewide.

7. N.C. Gen. Stat. § 105-277.7(c)(1) requires the Board to use estimated cash rental rates for valuing agricultural land based on either "individual county studies or from contracts with federal or State agencies[.]"

8. The section of the manual describing the "2009 Cash Rent Study" states that "[t]o ensure respondent confidentiality and provide more statistical reliability, counties and districts with fewer than 10 reports are not published individually, but are included in aggregate totals."

9. The manual states that "Net Present Values were divided by a capitalization rate of 9.00% to produce the Forestland Schedule." See N.C. Gen. Stat. § 105-277.7(c)(3) (requiring that "[t]he capitalization rate for forestland shall be nine percent (9%).").

10. N.C. Gen. Stat. § 105-277.7(c)(2) requires the Board to obtain "recommended net income ranges for forestland . . . [from] the Forestry Section of the North Carolina Cooperative Extension Service." The manual states that the Forestry Section in its procedure for making a forestry schedule and forestry income considered individual factors such as soil productivity, "indicatory tree species (or stand type)[,]" average stand establishment, annual management costs, average rotation length, timber yield, and "average timber stumpage prices." See N.C. Gen. Stat. § 105-277.7(c)(2).

B. Tax assessor's recommendations

The County administrative and tax assessor's offices, created their own "2011 Use-Value Manual" extracting from the UVA Board's manual pertinent information for Sampson County to assist the Commissioners in understanding and adopting present-use values for 2011. Prior to the adoption of the County's present-use SOV, the tax assessor made a recommended present-use SOV to Commissioners which stated that for all agricultural lands in Sampson County, including both MLRA 133A and 153A, the County's agriculture schedule should follow the manual's schedule of values for only one quality classification of soil, "Class II[,]" which was based on rent figures from the "2009 Cash Rent Study" for "medium" productive soils.[11] Specifically, the assessor recommended to the Commissioners a present-use value of $815.00 per acre for all Sampson County agricultural land located in MLRA 133A and a value of $785.00 per acre for all present-use agricultural land located in MLRA 153A, based on the manual's rental rates of $53.00 and $51.00, respectively, for "average soil[.]" The assessor's recommendation excluded the manual's other schedule values for classes I (best) or III (fair) quality soils, explaining that "[a]t this time the County does not have the capability to use digitized soil information to apply to each parcel, for this reason one price is chosen to value land under present-use value classification." Likewise for forestry land, the tax assessor administrator recommended for both MLRA 133A and 153A that the present-use forestry schedule follow the manual's values for one quality class of soil, "Class II" because of the same limitation. Specifically, the assessor recommended a present-use forestry value of $305.00 per acre for both MLRA 133A and 153A and excluded the other four soil quality categories.

C. Public hearings

Prior to the adoption of the Sampson County present-use SOV, the Commissioners held public hearings to obtain input from residents regarding the proposed present-use SOV. According to minutes from the 18 October 2010 Board of Commissioners' meeting, several county residents voiced concerns about the proposed schedule of values based on how the bad economic conditions were negatively affecting the farming industry in the County. Additionally, minutes from the 8 November 2010 Board of Commissioners meeting show

---

11. The 2009 Rents Study included MLRA rent averages for soils classified as "high productivity[,]" "medium productivity[,]" and "low productivity[.]"

that the County information director told Commissioners that it would cost more than $100,000.00 to implement a computer-based system to assign multiple values based on soil quality for each parcel of real property in the County.

D.  Adoption of present-use SOV

On 15 November 2010, the Commissioners adopted the following present-use valuation schedules:

- Agricultural       Schedule       MLRA 133A       $657.00

- Agricultural       Schedule       MLRA 153A       $630.00

- Forest Land (133A and 153A)                       $382.00[.]

The following notes were also included with the above values:

- The information shown on this page comes from the 2011 Use-Value Manual for Agriculture, Horticulture and Forest Land (published by the North Carolina Department of Revenue). At this time the County does not have the capacity to use digitized soil information to apply to each parcel, for this reason one price is chosen to value land under present-use value classification.

- All land in Present Use Valuation will be considered by using the information shown above unless the property owner supplies the Tax Assessor with a detailed soil analysis of their property. This information will then be taken into consideration, and the land classes will be adjusted according to the 2011-Use Value Manual for Agriculture, Horticulture and Forest Land.

County Manager Ed Causey testified that the Commissioners in adopting the present-use SOV considered (1) the cost to the County to implement a system to make present-use values based on soil quality; (2) the input from residents at the Board of Commissioners' meetings and the Commissioners' individual discussions with several farmers in the County about how the proposed present-use SOV would impact the local economy; (3) the significant economic impact of agriculture in Sampson County; (4) that the figures in the manual were based on rental rates; and (5) the current hard economic conditions, unemployment in the county, and hardships in certain segments of the agricultural businesses, such as poultry. Mr. Causey stated that the Commissioners used the manual's figures from the rent study as a

IN RE APPEAL OF McLAMB

[218 N.C. App. 485 (2012)]

baseline and because of concerns that farmers were not paying higher rents, lowered the assessor's proposed present-use schedule figures for agriculture to ensure that most people were not overburdened, given the economic situation.

E. Analysis

The "substantial evidence" before us, *see Murray*, 179 N.C. App. at 783, 635 S.E.2d at 479, contrary to petitioner's argument, does not demonstrate an arbitrary procedure by the Commissioners in its adoption of the County's present-use SOV. Because of technology costs, the Commissioners chose to base their present-use SOV on the manual's values for MLRAs 133A and 153A "Class II" or "Average Soil" schedules, as recommended by the assessor, rather than basing it on individual parcel soil quality. Utilizing the manual's "Class II" agricultural schedules was not arbitrary or capricious, as those figures were based on present-use income, specifically "average" rents for medium productive soil for each MLRA from the 2009 Cash Rent Study. *See* N.C. Gen. Stat. § 105-277.2(5). Since the Commissioners utilized the manual's agricultural schedules based on income figures from the rent study, it did not need to conduct an independent county study of rental incomes. After noting that these figures were based on average rental rates from 2009 and hearing from residents about the hard economic conditions and economic outlook of the County in 2010, the Commissioners reduced the present-use agriculture schedules for each MLRA. Because present-use assessments operate as a tax deferral, *see Parker*, 76 N.C. App. at 450, 333 S.E.2d at 752, and were initially passed to help farmers keep their farmland by lowering tax rates, this downward adjustment would be far from arbitrary or capricious, as that change would operate to further that purpose by reducing tax rates in response to the down-turn in the economy and to help farmers keep their land. As further evidence that those figures were not arbitrary, we note that the Commissioner's agricultural schedules for MLRA 133A and 153A fall between the manual's recommended schedule values for "Class II" (based on average soil rents) and "Class III" (based on fair soil rents). Therefore, petitioner failed to carry his burden to show that the County's agricultural present-use SOV was arbitrary or capricious. *See AMP*, 287 N.C. at 563, 215 S.E.2d at 762.

As noted above, petitioner argues that the present-use SOV was arbitrary and capricious because the agricultural present-use SOV was reduced from the assessor's recommendation based on the down-turn in the economy but the forestry present-use SOV was increased

from the assessor's recommendation. We note that evidence in the record shows that the Commissioners received input from residents regarding how the economy had negatively affected the agricultural industry in Sampson County, but there were few comments at the meeting regarding the economic impact on forestry. According to minutes from the 18 October 2010 board meeting, ten residents voiced their opinions regarding the proposed present-use SOV and only one mentioned "woodland," but most voiced concerns regarding how the assessment would affect the agricultural industry in the county. There is no explanation in the record for the increase from the tax assessor's recommended forestry present-use SOV. As noted above, the manual's figures for the forestry net incomes for the forestry schedule are provided by the Forestry Section of the North Carolina Cooperative Extension Service, and unlike the recommended agricultural schedule which is based on rental income from the rent study, forestry income is based on the Forestry Section's understanding and consideration of multiple factors such as soil productivity, "indicatory tree species or stand type[,]" average stand establishment, annual management costs, average rotation length, timber yield, and "average timber stumpage prices." See N.C. Gen. Stat. § 105-277.7(c)(2). The County's forestry schedule did not stray far from these recommendations, as the Commissioners chose $382.00 for both MLRA 133A and 153A, which was between the manual's recommended forestry schedule for "Class I" and "Class II" quality soils in those MLRAs. Therefore, as the forestry present-use SOV was within the range of the figures listed in the manual, we cannot say that petitioner carried his burden of showing that the County's forestry schedule was arbitrary or capricious. See AMP, 287 N.C. at 563, 215 S.E.2d at 762.[12]

We further note that even though the County was not required to base its present-use SOV on soil quality data, the SOV specifically states that any owner who believes that his agricultural or forestry land is overvalued may challenge his valuation by supplying "the Tax Assessor with a detailed soil analysis of their property" and that "information [would] then be taken into consideration, and the land

---

12. We find *Appeal of Land & Mineral Co.*, 49 N.C. App. 608, 614-15, 272 S.E.2d 878, 882-83 (1980), cited by petitioner, inapplicable as the Court held that the County's "blanket valuation" of a parcel of property was arbitrary and capacious because the County in making its "true value" assessment failed to consider the factors in N.C. Gen. Stat. § 105-317(a). Here, as noted above, the factors in N.C. Gen. Stat. § 105-317(a) are "irrelevant and immaterial" in a present-use valuation. *See McElwee*, 304 N.C. at 89, 283 S.E.2d at 128.

classes will be adjusted according to the 2011-Use Value Manual for Agriculture, Horticulture and Forest Land." However, petitioner challenges this provision of the present-use SOV in his next argument.

## VI.  Corrective Procedure

[6] Petitioner argues next that the provision in the present-use SOV allowing a landowner to submit a soil analysis for determination as to whether the values of his land should be reduced based on the manual "does not achieve fairness." Petitioner argues that since the Commissioners chose a median figure for its present-use SOV, some properties are overvalued while other properties are undervalued. Petitioner argues that because of the reduction in taxes from those properties that are undervalued, Commissioners will have to increase the tax rates to make up for those losses. Petitioner further argues that owners of overvalued property would be "paying a disproportionately larger share of the tax burden while the owners of the undervalued property are paying a disproportionally smaller share of the tax burden." Respondent argues that "[t]here is no evidence that Sampson County would have to increase the tax rate for non-agricultural properties as a result of reducing the tax rate for agricultural properties in order to generate the revenue necessary to operate Sampson County" and as the present-use assessment operates the County takes "a loss" on taxes not collected based on true value "to achieve the General Assembly's overall goal of 'keeping the family farm in the hands of the farming family.' " Contrary to petitioner's argument, the purpose of the present-use value assessment is not to gain as much tax revenue as possible from owners of every type of land, as it operates as a tax deferment. *See Parker*, 76 N.C. App. at 450, 333 S.E.2d at 752. As respondent notes, the purpose of present-use valuation is to *reduce* tax rates for landowners involved in agriculture or forestry, and, in doing so, the County would possibly not receive as much tax revenue as it would if the land were assessed at its true value but farmers and landowners would be better able to keep their properties with the lower present-use tax rate. The present-use SOV is not at all arbitrary, as it furthers the goal of the present-use assessment legislation. In addition, the SOV permits a landowner who believes that his property is overvalued based on the "median" rates listed in the SOV to obtain a soil analysis and submit this information to the tax assessor in requesting a reduction in present-use value of his land. Petitioner is correct that it is highly unlikely that any landowner will ever challenge the assessment of his property as being too low, so that he is not paying as much in taxes

as he possibly could, but how the County Commissioners choose to administer the County's tax resources available to them is not an issue in this case. Accordingly, petitioner has failed to carry his burden to show that the County's present-use SOV "corrective procedure" is arbitrary or capricious. *See AMP*, 287 N.C. at 563, 215 S.E.2d at 762.

## VII. Exclusion of Witness and Maps

[7] Finally, petitioner argues that the Tax Commission's decision to exclude the testimony of Dr. Kleiss, a Professor and Extension Specialist in the Department of Soil Science at North Carolina State University, and the exclusion of USDA Sampson County Present-use Value Maps resulted in substantial prejudice to his case. Petitioner argues that "Dr. Kleiss would have provided further evidence to refute Sampson County's unsupported contention that it was impractical for it to use a soil based [present-use] evaluation system, and would have supported that testimony with the soil maps." Respondent states that petitioner was not prejudiced by the exclusion of Dr. Kleiss or the maps as "[w]hether or not it would have been practicable for Sampson County to use a more detailed soil-based [present-use] valuation system .than it did is irrelevant." (footnote omitted). Like respondent, we fail to see how the exclusion of this witness and the maps was prejudicial as the County was not required to adopt a present-use SOV based on the soil quality of individual parcels, as the manual recommends, or to implement a computer-based system to effect this recommendation. Therefore, petitioner's argument is overruled.

For the foregoing reasons, we affirm the Tax Commission's decision.

AFFIRMED.

Judges BRYANT and CALABRIA concur.